*In re* ESTATE OF KATHERINE BULKLEY LOWRY, Deceased.—
(TIMOTHY LOWRY, JR., *et al.*, Co-Ex'rs of the Estate of Katherine Bulkley Lowry, Petitioners-Appellees, *v.* CRAIG BULKLEY *et al.*, Respondents-Appellants.)

First District (4th Division)    No. 80-500

Opinion filed February 26, 1981.

James T. Griffin, of Chicago, for appellants.

Dowd & Dowd, Ltd., of Chicago (Joseph V. Dowd and Philip J. McGuire, of counsel), for appellees.

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

The appellants have appealed from the following rulings made by the trial court during the probate of a will:

1. the appellants were not legatees and thus were not entitled to notice of the probate of the will since the testator merely "requested" another legatee to divide certain property with the appellants;

2. the paragraph of the will stating that a specifically designated trust was revoked was effective to revoke that trust.

We find no error and affirm.

The testator, Katherine Bulkley Lowry, died March 23, 1977. She was survived by three children, 10 minor grandchildren and several second cousins, including Peter Bulkley and the appellants, Gary and Craig Bulkley, who are Peter's brothers.

Lowry's will was admitted to probate on June 6, 1977. The petition for probate of the will listed her children, grandchildren and Peter Bulkley as heirs or legatees. Neither Gary nor Craig Bulkley were listed as legatees, nor was a copy of the petition mailed to them. On May 4, 1978, several months after the period for contesting a will had expired (Ill. Rev. Stat. 1977, ch. 110½, par. 8—1), the co-executors of the estate filed, as a supplemental proceeding, a petition for an order of the court ruling that the testator's trust agreement, which had originally been executed in 1972, had been revoked by the will. Summonses as to these proceedings were issued to the appellants and they filed their answer. As already noted, the

trial court, after hearing arguments, ruled that the appellants were not legatees and thus had not been entitled to notice under the will and that the will revoked the trust.

Additional facts will be set forth as needed for the discussion of our reasons for affirmance of the trial court's decision.

## I.

■█ The trial court correctly ruled that the appellants were not legatees under the will.

Section 6—4(a) of the Probate Act (Ill. Rev. Stat. 1977, ch. 110½, par. 6—4(a)), requires that heirs and legatees be given notice of the probate of the will. Under that statute, as it presently reads, notice is not required to anyone other than heirs and legatees. The appellants concededly are not heirs. Thus, unless they are legatees, they were not entitled to notice.

The appellants were only mentioned once by name in the will. That was in article II which reads as follows:

> "I give all my personal and household effects not otherwise effectively disposed of, such as jewelry, clothing, automobiles, furniture, furnishings, silver, books and pictures (including policies of insurance thereon, if feasible) to PETER BULKLEY of the City of Hartford and State of Connecticut, and request that he divide said effects with his brothers, GARY BULKLEY and CRAIG BULKLEY."

■█ While at times, under special circumstances, words in a will such as "request" and "desire" have been construed as mandatory (see, for example, *Keiser v. Jensen* (1940), 373 Ill. 184, 25 N.E.2d 819), it is presumed that such language is used in its ordinary, precatory sense and does not impose a trust upon the legatee but gives the legatee to whom the request was made the discretion to accept or reject the request. (5 Page on Wills §40.5 (1960).) The rule is well settled that subsequent language, in order to reduce the legacy from an estate of inheritance to a lesser estate, must be clear and explicit so that there can be no uncertainty as to what was intended and generally this is not true of such words as "request" and "desire." (*Edgar County Children's Home v. Beltranena* (1949), 402 Ill. 385, 84 N.E.2d 363.) Furthermore, it is clear from other parts of the testator's will that she was aware of how to leave assets in trust or to more than one person. In article V of the will, the residuary clause, she left the residue of the estate to her co-executors "to be administered, managed and distributed under the terms and conditions which I have set forth herein as follows." Clause C of article V provided that "I give and bequeath to my aforesaed [*sic*] beloved grandchildren as shall survive me the rest, resdue [*sic*] and remainder of my estate, share and share alike." In light of these provisions clearly showing an intent to leave property in

trust for several persons, we should construe clauses not using such language but using words normally understood only in a precatory sense, in that latter sense. As the court remarked in *Edgar County Children's Home v. Beltranena* (1949), 402 Ill. 385, 388, 84 N.E.2d 363, 365:

> "That the testator was familiar with accurate dispositive terminology is apparent from his use of the words 'give devise and bequeath' in connection with his gift to his wife. By failing to employ words of similar import in subsequent provisions, he has indicated that the latter were intended to express a mere wish as to the future disposition of the property by his wife. The testator must be considered to have used language with ordinary intelligence, and if he did so he clearly would not adopt these different modes of expression without intending a difference of meaning. It is only by recognizing the latter terminology as mere precatory expressions that an inconsistency can be avoided."

Our conclusion is reinforced by the fact that when the testator first set up a trust in 1972 she left in trust "all my family furniture and heirlooms * * * to the descendants, per stirpes, living at the time of my death, of my cousin, Roger Bulkley and Marilyn Bulkley * * *. (They presently have four children—Peter Bulkley, Gary Bulkley, Craig Bulkley and Kerry Bulkley.)" and she also left two-thirds of the balance of a family trust to the Bulkley cousins, the principal to be distributed in equal shares; whereas after the final amendment to the trust, the corpus of the trust was to be given to Peter Bulkley "provided further that at his discretion I ask him to equitably distribute to his brothers, Gary Bulkley and Craig Bulkley, such funds as he deems them responsible and capable of handling * * *." This change in language demonstrates that the testator was fully aware of the difference between leaving property absolutely to certain persons to be divided between them and leaving property to one person with suggestions as to how it was to be handled and that she was capable of drafting a document to further either end. The change further indicates that as time went by the testator became less and less interested in leaving property to Gary and Craig Bulkley. The will was simply the culmination of this desire.

## II.

In light of the terms of the trust, the provision in the will specifically revoking the trust was effective.

In 1972 the testator executed a declaration of trust, describing certain of her property and providing for its disposition. In that instrument the testator-settlor declared herself to be the trustee of the described property. Successor co-trustees were also named. The trust agreement also provided that the "Grantor may by signed instrument delivered to the

trustee during the Grantor's life revoke this agreement in whole or in part * * *." This trust agreement was amended on several occasions but the testator-settlor remained the trustee and there was always a revocation clause. The final amendment was on February 11, 1977. In that amendment she again named herself as trustee of the property held in the trust. The amendment also provided that:

> "I may at any time or times during my lifetime by instrument in writing delivered to the Trustee or Co-Trustees (hereinafter referred to as Trustees) amend or revoke this declaration in whole or in part. The Trust Property to which any revocation relates shall be conveyed to me or otherwise as I direct. This power is personal to me and may not be exercised by my legal representative or others."

A will which she executed on the same day as the declaration of trust left the residue of her estate to the acting trustee under the trust. On March 2, 1977, the testator executed her last will which was the one admitted to probate. The first paragraph of that will reads as follows:

> "I, Katherine Bulkley Lowry, a resident of the city of Wilmette and State of Illinois, being of sound and disposing mind and memory declare this instrument to be my LAST WILL AND TESTAMENT, and I hereby revoke any and all other wills, codicils and trusts that I may have heretofore made, Executed or created. More particularly I wish by this instrument, my last will and testament, to revoke, set aside and nullify specifically a certain trust created by me on January 24, 1972 and known as the Katherine Bulkley Lowry Declaration of Trust No. 44995 as amended by amendments no. one through four inclusive."

The appellants contend that since a will is ambulatory and has no legal existence until it is "consummated by death," and the trust required that any revocations be by an instrument in writing executed during the settlor's lifetime, the language in the will, although clearly purporting to revoke the trust, was ineffective to do so. The appellants' contention that a will being ambulatory cannot revoke a trust which by its provisions can only be revoked during the settlor's lifetime is supported by language in several cases. Thus it was stated in *Rosenauer v. Title Insurance & Trust Co.* (1973), 30 Cal. App. 3d 300, 303, 106 Cal. Rptr. 321, 323: "Accordingly, it is settled that a power to revoke 'during the lifetime' of the settlor, which means by a revocation taking effect before the death of the settlor cannot be exercised by a will that in the nature of things cannot take effect before the death of the testator." Obviously this is true where there is no clause in the will explicitly revoking the trust and as in *In re Estate of Anderson* (1966), 69 Ill. App. 2d 352, 217 N.E.2d 444, *appeal denied* (1966), 33 Ill. 2d 627, and *Merchants National Bank v. Weinold* (1959), 22

Ill. App. 2d 219, 160 N.E.2d 174, *appeal denied* (1959), 17 Ill. 2d 630, in such event the will, if it refers to the trust and its assets at all, does nothing more than attempt to dispose of the trust assets. (See also, for example, *Ridge v. Bright* (1956), 244 N.C. 345, 93 S.E.2d 607; *Chase National Bank v. Tomagno* (Sup. Ct. 1939), 172 Misc. 63, 14 N.Y.S.2d 759.) A clause in a will purporting to bequeath property to someone is testamentary and has no effect until the death of the testator. Clearly, therefore, such a clause would be ineffective to revoke a trust which by its terms could only be revoked during the settlor's lifetime. Likewise, it is clear that even if the will contained a provision expressly purporting to revoke the trust, if any instrument revoking the trust must be delivered to the trustee during the settlor's lifetime and the will is only delivered to the trustee after the settlor's death, the attempted revocation would be ineffective. (See, for example, *Rosenauer v. Title Insurance & Trust Co.* (1973), 30 Cal. App. 3d 300, 106 Cal. Rptr. 321; *Connecticut General Life Insurance Co. v. First National Bank* (Minn. 1977), 262 N.W.2d 403; *Cohn v. Central National Bank* (1950), 191 Va. 12, 60 S.E.2d 30; Annot., 81 A.L.R.3d 959 (1977).) Neither situation is, however, present here. The language in the first paragraph of the will did not attempt merely to dispose of trust assets; rather, it clearly and specifically purported to revoke the trust. Indeed, there can be no question that had that paragraph not been in the will but had been executed, signed and received by the settlor in a separate document, the intended revocation would have been effective. Likewise, unlike the usual case, the settlor was the trustee. Accordingly, since she executed and retained the will, it was delivered to her during her lifetime.

It is not true, as appellants seem to assume, that an instrument called a will can serve only a testamentary purpose. An instrument may be in part a will and in part an instrument of a different type. (1 Page on Wills §6.7 (1960).) It is completely possible for one instrument to contain both a contract and a will or to embody several different transactions. (1 Page on Wills §5.4 (1960).) Accordingly it follows that a revocatory statement may be located in a will and still be effective to revoke a trust *a praesenti* if all other requirements are satisfied. As the court in *First National Bank v. Oppenheimer* (Prob. 1963), 23 Ohio Op. 2d 19, 22-23, 92 Ohio L. Abs. 233, 238-40, 190 N.E.2d 70, 73-74 stated:

> "A question has arisen as to whether or not a will, or an executed copy thereof, qualifies as 'an instrument in writing' by which Harvey Oppenheimer can amend, alter, or revoke, in whole or in part, the trust which he created with the First National Bank on May 9, 1957, if such will was delivered to the trustee during his lifetime.
>
> Bouvier's Law Dictionary defines an 'instrument' as a 'document or writing which gives formal expression to a legal act or agree-

ment for the purpose of creating, securing, modifying, or terminating a right; a writing executed and delivered as the evidence of an act or agreement.'

Black's Law Dictionary defines an 'instrument' as a 'written document; a formal or legal document in writing, such as a contract, deed, will, bond, or lease.'

For numerous cases which define a will as an 'instrument in writing' see 21 Words and Phrases, 520 et seq. Baker v. Baker, et al., 51 Ohio St. 217, 37 N.E. 125; 41 O.Jur. 262; 94 C.J.S. Wills § 127(1), p. 898; 57 Am. Jur. 40; Vol. 1, Page on Wills, Section 1.2, p. 2.

We, therefore, must conclude that both a will and a fully executed copy of an original will can properly be described as instruments in writing.

We next are confronted with the question as to whether or not a will, because of its ambulatory nature, is an instrument which will enable a trustor to amend, alter, or revoke a revocable living trust by delivering an executed copy thereof to the trustee in the lifetime of the testator grantor.

It is elementary that, until the death of the testator, a will is ambulatory and takes effect as a will only after the maker's death, and until then it is revocable. 41 O.Jur. 263; 94 C.J.S. Wills § 127(2), p. 899; 57 Am.Jur.40; Vol. 1, Page on Wills, Section 1.2, p. 3; Vol. 1, Page on Wills, Section 5.17, p. 206.

It has been held that where an instrument of trust *inter vivos* reserves in the settlor 'the power to alter or amend the disposition to be made of the trust estate after my decease,' conditioned upon a signed written instrument delivered to the trustee, an attempted revocation made by will, no written instrument having been delivered to the trustee during the lifetime of the settlor, does not revoke the disposition made under the terms of the trust. Magoon, Admr. v. The Cleveland Trust Co., 101 Ohio App. 194, 134 N.E. 2d 879; Leahy v. Old Colony Trust Co., et al., 326 Mass. 49, 93 N.E.2d 238, 18 A.L.R.2d 1006. In these cases neither the wills nor executed copies of the wills were delivered to the trustees during the lifetimes of the grantors. In the case of Hackley Union National Bank v. Farmer, 252 Mich. 674, 234 N.W. 135, it was held that 'Execution and acknowledgment by donor before notary in Germany of formal instrument revoking trust agreement, and mailing certified copy thereof to trustee by donor was sufficient to work revocation under its terms providing that it might "be revoked by the donor at any time during his life by instrument in writing signed and acknowledged by the donor and delivered to the trustee," although original was retained by notary under laws of

Germany, and certified copy was not received by trustee until after donor's death.'

It is possible that an instrument may be in part a will and in part an instrument of a different type. Vol. 1, Page on Wills, Section 6.7, p. 241. An instrument which contains language appropriate to two or more different types of instruments will be construed in accordance with the intention of the testator as deduced from the instrument as a whole and from any extrinsic evidence that might be introduced and the inconsistent provisions will be eliminated and ignored as surplusage. Vol. 1, Page on Wills, Section 6.4, p. 232.

We, therefore, hold that when an instrument of trust *inter vivos* reserves in the settlor the right to amend, alter, or revoke the trust, in whole or in part, by an instrument in writing signed by the grantor and delivered to the trustee in the lifetime of the grantor, such trust may be amended, altered, or revoked by appropriate language contained in the settlor's will providing such will or a signed copy thereof is delivered to the trustee during the lifetime of the grantor * * *.' "

In *Sanderson v. Aubrey* (Tex. Civ. App. 1971), 472 S.W.2d 286, the settlor in her will provided that the trust was revoked. The will remained in her possession. No notice was given to the trustee; however under Texas law notice was not required. In holding that the language of the will effectively revoked the trust the court stated at 472 S.W.2d 286, 287-88:

"What we are concerned with is whether the trust revocation language in such will—which will could not have effect as such until the date of her death—operated and was immediately effective as a revocation of the trust. * * *.

The situation is not to be distinguished from one hypothesized, wherein among the effects of Mrs. Lucas found after her death in September, 1969, a written instrument was discovered wherein she had written to the effect that the *inter vivos* trust created for the benefit of the appellant in May, 1954, 'is now formally revoked'.

Our holding is that there would be an effective revocation. Here, in view of the express written language of Mrs. Lucas, as settlor, there was evidenced a 'definitive manifestation' of like revocation as of the date she signed her instrument of will in July, 1965. The language of revocation appearing as part of her will was not testamentary in its operation or effect so as to become effective later on and as of the date of her death, but actually became effective on the date of the will (July, 1965). Since as of the time of her signatory action the trust had been extinguished the property 'reverted' to her so that she could dispose of it by will. In view of

her will it became the property of the appellee, Annie Eva Aubrey, upon her death in September, 1969.

＊ ＊ ＊

Supplying additional logic for our conclusion are principles of law applicable to wills. When an original will has been made and there is a subsequent will executed upon declaration therein contained that 'all wills by me heretofore made are revoked', the revocation of the prior will takes effect *in praesenti* as of the time the new will is executed. Should said new will be revoked or annulled by a subsequently executed instrument or by the testator's intentional destruction of it the will which had been earlier revoked would not be reinstated in consequence. Indeed, if there should occur a death of such a person it would be correct to say that he had died intestate, because no former will which had been revoked could be said to have become revived. 61 Tex.Jur.2d, p. 209, 'Wills', Sec. 95, 'Recission of revoking instrument as revival of prior will.' "

■■ We are persuaded by the logic of both *Oppenheimer* and *Sanderson*. In light of the principle that an instrument can act both as a will and as some other legal document, we hold that the first paragraph of the will purporting to revoke the trust was an instrument in writing delivered to the trustee which effectively revoked the trust on March 2, 1977, the day it was executed, which date was during the settlor's lifetime.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.