456 So.2d 1327 (1984)
Norton EUART, Appellant,
v.
David S. YOAKLEY, et al., Appellees.
No. 83-1725.
District Court of Appeal of Florida, Fourth District.
October 10, 1984.
*1328 Samuel L. Heller, Fort Lauderdale, for appellant.
Jane Kreusler-Walsh and Larry Klein and Easley, Massa & Willits, West Palm Beach, for appellees.
NESBITT, JOSEPH, Associate Judge.
Norton Euart appeals a final judgment which approved the accounting of a trustee, terminated the trust, and denied Euart's counterclaim and cross-claim. We affirm.
On November 5, 1974, Jane Greer Brown established a revocable inter vivos trust in which she placed all of her income producing property. About one year later, the trustee acquired a house and property located in Fort Lauderdale which was known as Rio Vista. Brown lived her life out on Rio Vista, although title to the property was held by the trustee and the property constituted a trust asset.
The appellant, Norton Euart, began working for Brown in 1973 as her boat captain, and eventually he became her chauffeur and friend. Euart lived in one of the smaller houses on Rio Vista.[1] On June 7, 1978, Brown executed a will which contained the following provision:
If at the time of my death, NORTON K. EUART is in my employ, and if he survives me, then I give, devise and bequeath to him such shares of stock of JANE'S BOAT CHARTERS, INC., a Florida corporation, as I may then own, together with the real estate which I own in Fort Lauderdale, Broward County, Florida.
A copy of this will was furnished to the trustee, who was also acting as Brown's attorney. Brown died on September 5, 1980.
Euart contends that the provision in the will affected a partial revocation of the trust in regard to the Rio Vista property when the will was delivered to the trustee. This contention is based upon the argument that Rio Vista was the only real estate in Fort Lauderdale which Brown "owned" at the time the will was executed. Euart argues that the revocation removed Rio Vista from the trust and that, therefore, it was part of Brown's estate when she died and should pass to him according to the will.
The sole issue to be determined is whether the will provision effectively revoked the trust insofar as the Rio Vista property is concerned. Under Florida law, if the trust instrument reserves a power in the settlor to revoke the trust by giving notice to the trustee in a specified form or manner, the settlor can exercise that power only by giving notice to the trustee in the prescribed manner. If a method for the exercise of a power of revocation is set out in the trust agreement, then the power must be exercised in strict conformity to its terms. Macfarlane v. First National Bank of Miami, 203 So.2d 57 (Fla. 3d DCA 1967). In the present case, the revocation provision in the trust agreement states:
The Settlor reserves the right at any time and from time to time during her life, by an instrument signed and acknowledged by her and delivered to the Trustee thirty (30) days in advance of the *1329 effective date: (1) to withdraw any or all of the property held in trust under this agreement or revoke the trust created by such agreement in whole or in part ...; (2) alter, amend or modify this agreement in any respect... .
The first question presented is whether a will, being testamentary in nature, can also act as an instrument in writing under the terms of a trust and thereby effect a revocation upon its execution and delivery to a trustee. We agree with the reasoning and logic in the cases cited by Euart which conclude that a will can have a dual character; be testamentary in part, but operative in praesenti in other parts. Sanderson v. Aubrey, 472 S.W.2d 286 (Tex.Civ.App. 1971); First National Bank of Cincinnati v. Oppenheimer, 23 Ohio Op.2d 19, 190 N.E.2d 70 (Prob.Ct. 1963). As stated by the court in Oppenheimer:
[W]hen an instrument of trust inter vivos reserves in the settlor the right to amend, alter or revoke the trust, in whole or in part, by an instrument in writing signed by the grantor and delivered to the trustee in the lifetime of the grantor, such trust may be amended, altered, or revoked by appropriate language contained in the settlor's will providing such will or a signed copy thereof is delivered to the trustee during the lifetime of the grantor... .
190 N.E.2d at 74. Accordingly, we find that a will is an instrument in writing which can be an appropriate mode of fully or partially revoking an inter vivos trust when it is signed by the settlor and delivered to the trustee in accordance with the terms of the trust.
This, however, does not end our inquiry. As Euart points out in his brief, the settlor's intention is the polestar by which courts must be guided in determining whether a revocation of an inter vivos trust has occurred. Accordingly, we must determine whether the language in the present will provision amounts to a "definitive manifestation" of Brown's intent to revoke the trust as to the Rio Vista property and, thus, overcomes the normal testamentary character of a will provision. See Sanderson. Cf. Litsey v. First Federal Savings & Loan Association of Tampa, 243 So.2d 239 (Fla. 2d DCA 1971) (revocation of a Totten trust requires some decisive act or declaration of disaffirmance).
Euart argues that the will provision is so inconsistent with the trust retaining the Rio Vista property that it must be deemed a revocation. We disagree and find that the cases relied upon by Euart are clearly distinguishable. In Oppenheimer, the will provision unequivocally and in specific language manifested the settlor-testator's present intent to revoke the trust in question. 190 N.E.2d at 71. Likewise, in Sanderson, specific language in the will manifested an intent to revoke the trust. As pointed out by the court in Sanderson:
[I]n view of the express written language of Mrs. Lucas, as settlor, there was evidenced a "definitive manifestation" of ... revocation as of the date she signed her instrument of will in July, 1965.
472 S.W.2d at 288. See also Oppenheimer, 190 N.E.2d at 74 (A "trust may be amended, altered, or revoked by appropriate language contained in the settlor's will... ." [emphasis added]). The will provision in the present case, which simply devises "the real estate which I own in Fort Lauderdale," does not even inferentially refer to the trust agreement. The language is patently ineffective to manifest a present intent to revoke the inter vivos trust; it is merely dispositive in nature and, thus, testamentary. A will clause can have effect during the life of the testator only when the language clearly and explicitly manifests such an intent.[2]
*1330 The holdings in both Oppenheimer and Sanderson were quoted at length in a recent Illinois decision. See Estate of Lowry, 93 Ill. App.3d 1077, 49 Ill.Dec. 366, 418 N.E.2d 10 (1981). As in Oppenheimer and Sanderson, the will in Lowry contained express language specifically revoking the trust in question. In rendering its decision, however, the court enunciated a statement of the law that we find is particularly applicable in the present case:
[I]t was stated in Rosenauer v. Title Insurance & Trust Co. (1973), 30 Cal. App.3d 300, 303, 106 Cal. Rptr. 321, 323: "Accordingly, it is settled that a power to revoke `during the lifetime' of the settlor, which means by a revocation taking effect before the death of the settlor cannot be exercised by a will that in the nature of things cannot take effect before the death of the testator." Obviously this is true where there is no clause in the will explicitly revoking the trust and [citations omitted] in such event the will, if it refers to the trust and its assets at all, does nothing more than attempt to dispose of the trust assets. [citations omitted] A clause in a will purporting to bequeath property to someone is testamentary and has no effect until the death of the testator. [emphasis added]
Lowry, 418 N.E.2d at 13-14.
Accordingly, we reject Euart's contention that the will provision involved here is so inconsistent with the trust that it must have been meant as a partial revocation. The language was testamentary in nature and ineffective to revoke the trust.[3]Lowry; Sanderson. The language simply falls far short of evidencing a definitive manifestation of intent to revoke any part of the trust.
The judgment is accordingly affirmed.
PEARSON, DANIEL S., Associate Judge, concurs.
SCHWARTZ, ALAN R., Associate Judge, dissents with opinion.
SCHWARTZ, ALAN R., Associate Judge (dissenting).
Applying the very authorities cited by the majority, I reach a contrary conclusion. It seems quite clear that, as to the Ft. Lauderdale property, the execution and delivery of the will to the trustee effected a revocation of that portion of the trust[1] *1331 which provided for the distribution of the trust estate after Mrs. Brown's death:
SECOND: After the death of the Settlor, the Trustee shall distribute the trust estate to and among Settlor's then living issue, per stirpes.
And, contrary to the court's apparent view, it is hardly an appropriate objection that a disposition is testamentary in character (as this one certainly is) when it is contained in a validly executed will. On the simple ground, therefore, that both the terms of the trust and the requirements of the Statute of Wills were complied with, I would reverse.
NOTES
[1] This house and the lot on which it was located were transferred to Euart during Brown's lifetime by way of the trustee deeding the property to Brown and Brown immediately quit-claiming it over to Euart.
[2] The only other case relied upon by Euart is also distinguishable. Although the will involved in In Re Sahakian's Estate, 44 Misc.2d 849, 255 N.Y.S.2d 520 (Surrogate's Ct. 1965) did not contain a provision expressly revoking the trust, all the parties concerned in that case stipulated that the settlor-testator's intent was to distribute the trust res according to the terms of his will. In contradistinction, Brown's intent is the very issue which is being hotly disputed in the present case. To the extent Sahakian's Estate can be interpreted contrary to this opinion, we choose not to follow it.
[3] The court held in Oppenheimer:

An instrument which contains language appropriate to two or more different types of instruments will be construed in accordance with the intention of the testator as deduced from the instrument as a whole and from any extrinsic evidence that might be introduced and the inconsistent provisions will be eliminated and ignored as surplusage. [citation omitted] [emphasis added]
190 N.E.2d at 74. Therefore, if we were to accept Euart's contention that the will provision contained language appropriate for a revocation of trust, the "parol evidence" testimony of the trustee as to Brown's intent not to revoke the trust, would be admissible and properly considered by the trial court under the Oppenheimer holding. If that were the case, we would be bound to affirm the trial court's ruling because it would be supported by competent substantial evidence. Cf. Elmore v. Enterprise Developers, Inc., 418 So.2d 1078 (Fla. 4th DCA 1982) (where language in a contract is ambiguous or uncertain in meaning, extrinsic evidence is admissible for the purpose of determining the intent of the parties; where a contract provision is susceptible of two or more meanings, the meaning adopted by the trial court must be affirmed unless clearly erroneous). We simply find, however, that the will provision does not contain "language appropriate to two or more different instruments," but rather contains only testamentary language appropriate for a will. Cf. Sanderson ("[t]he language of revocation appearing as part of her will was not testamentary").
[1] The trust specifically provides:

FIFTH: The Settlor reserves the right at any time and from time to time during her life, by an instrument signed and acknowledged by her and delivered to the Trustee thirty (30) days in advance of the effective date:
(1) to withdraw any or all of the property held in trust under this agreement or revoke the trust created by such agreement in whole or in part, subject to the payment of the Trustee's compensation and the expenses of the trust;
(2) alter, amend or modify this agreement in any respect; and
(3) appoint any additional, substitute or successor Trustee, as the case may be. [e.s.]