No. 75,699

In the Matter of the Estate of ELLEN M. SANDERS, Deceased.

929 P.2d 153

Opinion filed December 13, 1996.

*Paul Arabia*, of Wichita, argued the cause and was on the brief for appellant Bill Sanders.

*Philip W. Unruh*, of Harper, argued the cause and was on the brief for appellant Mac Sanders.

*Kenneth F. Beck*, of Beck & Beck Law Office, of Wichita, argued the cause and was on the brief for appellee Patricia Bergman.

The opinion of the court was delivered by

LARSON, J.: This case presents for our review the first impression question in Kansas of whether a will which made no reference to a preexisting inter vivos trust had the legal effect of revoking the trust.

Although our decision is based on the construction of the applicable legal documents whose provisions we will fully set forth, we will also recite facts surrounding their execution.

On November 29, 1990, Ellen M. Sanders executed a restatement and amendment of the Ellen M. Sanders Trust Agreement dated July 23, 1990. Ellen was the grantor, trustee, and lifetime beneficiary of the trust.

The trust agreements dated July 23, 1990, and November 29, 1990, were both amendable and revocable in Part I, Paragraph 2 of both documents:

"TRUST REVOCABLE BY ELLEN M. SANDERS. This Agreement may be amended from time to time, and may be revoked partially or fully by ELLEN M. SANDERS during her lifetime by a writing delivered to the Trustee, which shall specify the term of such amendment or revocation. No amendment hereto shall increase the duties and responsibilities of the Trustee without their consent."

The amended trust designated Ellen's brother, Frank Palmer, as successor trustee upon Ellen's death or her inability to act, and provided the following statement relating to the successor's service during Ellen's lifetime:

"If at any time during Grantor's lifetime she is under a legal disability, or resigns in writing, or, if in the opinion of Frank Palmer, Grantor's brother, Grantor is unable to properly manage her affairs by reason of illness or mental or physical disability, or is determined unable to act as Trustee by reason of incapacity as determined by a commission of two (2) persons duly licensed to practice medicine and surgery by the State Board of Healing Arts, Grantor's brother, Frank Palmer, shall carry out the provisions contained herein as successor trustee."

Frank Palmer was a signatory party to the trust in his capacity as successor trustee.

The dispositive provisions of the amended trust stated the principal and income should be used for Ellen's benefit during her lifetime. It then provided that after Ellen's death, the trust property should be held in trust for a period of 10 years with the income payable to her son, Mac Sanders, and her grandson, Bill Sanders, in equal shares. Upon termination of the trust, 480 acres of designated real property in Harper County, Kansas, was to be distributed to Mac Sanders, 480 acres of different designated real property in Harper County, Kansas, was to be distributed to Bill Sanders, and an undivided one-ninth interest in certain real property was to be distributed equally to Mac Sanders, Bill Sanders, and Patricia Bergman, with all the residue of the trust to be divided equally among Patricia Bergman, Mac Sanders, and Bill Sanders. The November 29, 1990, amendment of the trust had the effect of removing Patricia Bergman's son, Kenneth, as a beneficiary and of reducing Patricia's share to a one-third interest in a single parcel of land and the residuary.

The trust was fully funded by the execution and recording of deeds of conveyance of the real property to Ellen as trustee of "the Ellen M. Sanders Trust Agreement, dated July 23, 1990." Schedule A attached to the trust agreement also stated the trust corpus was to include: "All personal property of every kind wherever located including specifically but not limited to all household goods, personal effects, jewelry, clothing, furniture, and textures and all items in the home at 104 W. 13th, Harper, Harper County, Kansas."

Contemporaneous with execution of the amended trust, Ellen executed a pour-over will and a durable power of attorney. The pour-over will, dated and executed November 29, 1990, left her entire estate to the trust, but provided that in the event the trust no longer existed or could not take, Ellen's estate was to be divided between Mac Sanders and Bill Sanders, share and share alike. The will specifically stated: "I am not unmindful of my daughter, Patricia Bergman, but am not making any provision for her." The broad durable power of attorney named Frank Palmer and Mac Sanders attorneys-in-fact.

On February 12, 1992, Ellen executed a second amendment to the trust, essentially only reducing the time the trust continued after her death to 5 years rather than 10, but specifically republishing, ratifying, and reaffirming her existing trust agreement as modified by this second amendment. Frank Palmer again signed this amendment as successor trustee.

On June 24, 1992, Ellen executed her third amendment to the trust. This amendment added Mac Sanders and Bill Sanders as successor co-trustees in the event that Frank Palmer was unable to act as successor trustee. Again, the trust agreement as it existed was republished, ratified, and reaffirmed in all respects except as modified by the previous restatement and amendment, the second amendment, and this third amendment. Ellen signed as settlor and trustee, but neither Frank, nor Mac, nor Bill executed the document as successor trustee.

All of the documents that Ellen had executed up to this time had been prepared by attorney Phillip W. Unruh, who represented Bill and Mac at trial.

Several months prior to July 13, 1993, Ellen told Patricia that she wished to change her will, but that she did not wish to consult with attorney Unruh. Patricia recommended attorney Theodore J. Nichols, whom she did not know, but who had performed services for her son and grandchildren.

Nichols met with Ellen once before July 8, 1993, regarding preparation of her will. Attorney Nichols prepared a will as requested by Ellen. The will was executed on July 8, 1993, and divided all of Ellen's property among her surviving children, Patricia and Mac, and her grandson, Bill, in equal shares, specifically providing the following:

**"ITEM III**

"It is my greatest desire that my family agree and get along with one another in disposition and distribution of my estate. Because I believe that they will be able to do so, I direct that, after the payment of debts, claims, taxes and expenses of administration, all of my remaining property, real, personal, and mixed, and wherever located, be divided equally, in kind, among my surviving children Patty Bergman and Mac Sanders, and my grandson, Bill Sanders, as the three of them may agree.

"In the event that they are unable to agree, then I direct that the Court appoint three independent appraisers to distribute all of my property equally, in kind, to each Patty Bergman, Mac Sanders, and Bill Sanders as a majority of said appraisers may agree. If the appraisers determine that my property cannot be distributed equally in kind, then I direct that all of my property be sold at private sale or public auction, as my Co-Executors, hereinafter named, deem to be in the best interests of my estate and that the proceeds from the sale be distributed equally, share and share alike, to Patty Bergman, Mac Sanders, and Bill Sanders."

None of the beneficiaries were present when the will was executed. After signing the new will, Ellen discovered a few minor typographical errors, and on July 13, 1993, Ellen met again with Nichols and executed a new will correcting these errors. The will specifically contained the dispositive provision previously set forth and provided:

"I, **Ellen Sanders, sometimes known as Ellen M. Sanders,** hereby make, publish and declare this to be my Last Will and Testament. By this publication I intend to revoke any prior will or codicil."

The will did not make any reference of any nature whatsoever to the Ellen M. Sanders Trust dated July 23, 1990.

Ellen died on September 15, 1994. Patricia offered the July 13, 1993, will for probate. Mac and Bill challenged this will on the grounds that Ellen lacked testamentary capacity to execute the will or was unduly influenced. They also asserted that because the July 13, 1993, will made no reference to the trust, it could not revoke the trust. They further alleged that if the will was construed to terminate the trust, Ellen had not complied with the revocation provisions by notifying Frank Palmer, who they claimed had succeeded her and was acting as successor trustee.

The case was tried over several days in June 1995. The parties submitted detailed suggested findings of fact and conclusions of law, and the trial court issued its opinion in November 1995. The court concluded that Ellen possessed the testamentary capacity to execute the July 13, 1993, will and that she had not been unduly influenced. The court noted Ellen had never been advised that Frank was acting as successor trustee and Frank had demonstrated confusion as to whether he had been acting as trustee or under the power of attorney. The court thus found that Frank had not suc-

ceeded Ellen as successor trustee during her lifetime. Additionally, the court held the successorship provision of the trust was ambiguous and unenforceable.

The court then determined that the will of July 13, 1993, revoked the inter vivos trust. Finding that the adoption of the arguments of Bill and Mac would give effect to form over substance, the court ruled:

"Based on the above and foregoing, the Court concludes that Kansas law, justice, equity and the evidence adduced at trial require it to give effect to Ellen Sanders' last stated intention regarding the disposition and distribution of her estate upon her death. Accordingly, this Court concludes that it was Ellen Sanders' specific intention when she executed the July 13, 1993, will to alter, amend, modify and/or revoke any previous testamentary dispositions (be they by will or trust document); that the Last Will and Testament of Ellen Sanders dated July 13, 1993, was her last expressed intent of who the beneficiaries of her estate should be; that the Last Will and Testament of Ellen M. Sanders dated July 13, 1993, should be and it is hereby admitted to probate in the District Court of Harper County, Kansas, and that all property purported to be owned or held by the Ellen M. Sanders Trust shall be subject to disposition and distribution through the Estate of Ellen M. Sanders rather than through the purported Trust."

Mac appeals the trial court's decision as to whether Frank became the successor trustee, and both Bill and Mac appeal the decision that the July 23, 1990, trust as amended was revoked by the July 13, 1993, will. The appeal has been transferred to our court pursuant to K.S.A. 20-3018(c).

Although two issues are raised on appeal, because of the result we reach, we need only consider whether Ellen M. Sanders' will of July 13, 1993, revoked the Ellen M. Sanders Trust Agreement dated July 23, 1990, as subsequently amended.

Under our standard of review, "[t]he legal effect of a written instrument is a question of law for the court to decide. On appeal, a written instrument or contract may be construed and its legal effect determined by the appellate court regardless of the construction made by the trial court." *Galindo v. City of Coffeyville*, 256 Kan. 455, Syl. ¶ 2, 885 P.2d 1246 (1994). Whether an instrument is ambiguous is a matter of law to be decided by the court. *Mobile Acres, Inc. v. Kurata*, 211 Kan. 833, 839, 508 P.2d 889 (1973).

Because we are dealing with the provisions (or lack thereof) of both a will and a trust, the statement in *In re Living Trust of Huxtable*, 243 Kan. 531, 534, 757 P.2d 1262 (1988), dealing with both, is instructive: "While most of the published cases involve the construction of provisions in wills, the same rules that apply to their construction apply to trusts and most other written documents. *In re Estate of Hauck*, 170 Kan. 116, 119-20, 223 P.2d 707(1950)."

Justice Holmes in *Huxtable* went on to declare that "[i]t is the general rule that if the language of a written instrument is clear and can be carried out as written there is no room for rules of construction." 243 Kan. at 534 (citing *In re Estate of Wernet*, 226 Kan. 97, 596 P.2d 137 [1979]). Also cited with approval was *In re Estate of Graves*, 203 Kan. 762, 457 P.2d 71 (1969), in which syllabus ¶ 4 stated:

"In considering a will a court cannot begin by inferring a testator's intention and then construe the will to give effect to such intention however probable it may be, nor can it rewrite the will, in whole or in part, to conform to such presumed intention. It is the duty of a court to construe not to construct a will."

We commence our discussion of the arguments and authorities raised by the parties with the clear understanding that the Ellen M. Sanders Trust Agreement of July 23, 1990, could be revoked partially or fully "by ELLEN M. SANDERS during her lifetime by a writing delivered to the Trustee, which shall specify the term of such amendment or revocation." Further, and equally important, we recognize that notwithstanding the arguments of Patricia Bergman and the findings of the trial court, the Last Will and Testament of Ellen M. Sanders dated July 13, 1993, makes absolutely no reference to the valid and existing revocable trust she had previously instituted and fully and lawfully funded.

The above revocation provision is clear, definite, and unambiguous. It gives rise to the equally clear authority that where a trust document contains specific provisions to be complied with, they are required to be followed. 76 Am. Jur. 2d, Trusts § 97, p. 134 states: "[I]f the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances."

76 Am. Jur. 2d, Trusts § 98, p. 135 goes on to state: "As a rule, a reserved power to revoke during the settlor's lifetime cannot be exercised by his will." Likewise, 89 C.J.S., Trusts § 91, p. 920 says: "Where a mode of revocation other than by will is specified, in the trust instrument, the trustor has no power to revoke the trust by will."

In a similar straightforward manner, Professor Austin Scott, in his treatise on trusts, states: "Where the settlor reserves a power to revoke the trust in a particular manner, he can revoke it only in that manner." 4 Scott on Trusts § 330.8 (4th ed. 1989). Professor Scott further states it is a question of interpretation of the instrument whether a provision reserving a power of revocation empowers the settlor to revoke it by will as well as by a transaction inter vivos. 4 Scott on Trusts § 330.8. However, he then cites 33 cases from Arkansas, California, Colorado, Florida, Illinois, Kentucky, Louisiana, Massachusetts, Minnesota, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Virginia, and Washington that held a trustee could not revoke a trust by a will and two cases from New York that held a trust could be revoked by a will. 4 Scott on Trusts § 330.8, p. 264 n.10.

Bogert, Trusts and Trustees § 1001 (2d ed. rev. 1983), resolves the issue in this manner: "The settlor may make provision for the *method* by which a power of revocation or termination is to be exercised and such a provision must be followed."

When faced with a lack of Kansas law directly on point, we have often turned to the guidance of the Restatement of Trusts, which in this instance provides in Restatement (Second) of Trusts § 330(1) (1957): "The settlor has power to revoke the trust if and to the extent that by the terms of the trust he reserved such a power." Comment (*j*) to § 330 states specifically:

"*j. Where method of revocation specified.* If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances.

. . . .

"If the settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will.

. . . .

". . . Ordinarily the power is not exercised by a general residuary clause disposing of all of the residue of the property of the settlor or all the property over which he has a power of appointment.

"If the settlor reserves a power to revoke the trust only by a notice in writing delivered to the trustee, he can revoke it only by delivering such a notice to the trustee."

For an additional compilation of the numerous cases in this area, see Annot., Exercise by Will of Trustor's Reserved Power to Revoke or Modify Inter Vivos Trust, 81 A.L.R.3d 959, which contains general statements consistent with those set forth above and cites cases which quote with approval Comment (*j*) to Restatement (Second) of Trusts § 330(1). The annotation states:

"[S]uch attempts to modify or revoke (if they can be regarded as such) have been uniformly unsuccessful. A settlor's general testamentary disposition of his property is ineffective to exercise a general or unrestricted power to revoke or modify an inter vivos trust.

. . . .

"Attempts to modify or revoke by will, considered as wills, have all failed." 81 A.L.R.3d at 961.

Although Mac and Bill primarily rely on the authorities above cited, they also contend that Ellen's intention at the execution of the trust was to have a specific method which must be utilized to revoke the trust, citing Restatement (Second) of Trusts § 330 Comment (*a*). They claim that because this intention was clearly expressed, it must govern, and no later, different intention may be inferred.

Mac and Bill further argue the trial court reformed and rewrote Ellen's will, which it is not permitted to do under Kansas law. They rely on rules of construction that since the will was silent as to the trust, there is no language from which any intention to revoke the trust can be determined. They cite many of the cases to which we have previously referred for the rule that before a trust can be revoked, it must be done clearly and unequivocally by an express reference to the trust. They specifically point out that the trust here involved was not a Totten trust, where a different rule might apply.

Bill, in his brief and at oral argument, suggested the rule which we should adopt in Kansas is that found in *In re Estate of Lowry*, 93 Ill. App. 3d 1077, 418 N.E.2d 10 (1981), which involved a self-declaration of trust with a reserved power to revoke during Katherine Lowry's (settlor's) lifetime by an instrument delivered to the trustee. While still trustee, the settlor executed a will expressly revoking the trust. That instrument was an effective instrument of revocation as well as a will.

The significant paragraph of Mrs. Lowry's will, which differs greatly from that of Ellen M. Sanders' will, read as follows:

" 'I, Katherine Bulkley Lowry, . . . hereby revoke any and all other wills, codicils and trusts that I may have heretofore made, Executed or created. More particularly I wish by this instrument, my last will and testament, to revoke, set aside and nullify specifically a certain trust created by me on January 24, 1972 and known as the Katherine Bulkley Lowry Declaration of Trust No. 44995 as amended by amendments no. one through four inclusive.' " 93 Ill. App. 3d at 1081.

Bill suggests that the *Lowry* rule, which allows the revocation of a trust when so stated in a will, would be logical for Kansas, but would not aid Ellen in this case because she specifically made no reference to her trust in her will, did not satisfy the necessary requirements for revocation, and showed no intention by her will of revoking the trust.

In this case, a strong public policy argument is made that settled and predictable common-law rules governing the revocation of valid trusts should not be displaced by completely different statutory rules relating to the revocation of wills. It is further contended that accidental and unintended revocations of trusts might be accomplished if the decision of the trial court is upheld. This argument requires that we appreciate the difference between a defeasible vested interest under a revocable trust and an ambulatory gift in a will. It is suggested that unnecessary litigation will ensue and uncertainty will reign if revocations of trusts may result without even a mention of the trusts to be so affected.

Patricia does not meet the compelling authority from the legal encyclopedia, treatises, and Restatement head on, but rather points out that in Kansas we rely on the intent of the settlor and testator,

citing *In re Estate of Pickrell,* 248 Kan. 247, 806 P.2d 1007 (1991). She contends Ellen's intent was clearly established by the testimony the trial court heard in this matter. Her principal argument is that because we recognized in *Pickrell* that inter vivos trusts are an integral part of many estate plans, this allows the rules regarding inter vivos trusts and wills to be applied interchangeably, notwithstanding the basic difference between the documents and statutory requirements for each.

Patricia notes that K.S.A. 59-602 (Ensley) and K.S.A. 59-603 (Ensley) were amended in 1992 to allow election by a surviving spouse against a will and any and all other dispositions subject to a surviving spouse's right of election, such as a revocable trust. See *Taliaferro v. Taliaferro,* 252 Kan. 192, 843 P.2d 240 (1992). Wills and inter vivos trusts are also alleged to be similar because they both are restricted from passing property to a foreign country and because rules regarding contractual wills and trusts are the same. Patricia contends that due to these similarities, we would be justified in blurring any difference between an inter vivos trust and a will and in upholding a finding that Ellen's later will had the effect of revoking the earlier trust even though the will made no reference to the trust's provisions or existence.

Patricia points out our case law history in Kansas in which wills and revocable trusts are treated alike, citing *Taliaferro,* 252 Kan. 192; *Newman v. George,* 243 Kan. 183, 755 P.2d 18 (1988), and *Ackers v. First National Bank of Topeka,* 192 Kan. 319, 387 P.2d 840 (1963). Patricia asserts that this history justifies a broad and expansive reading of *Pickrell,* 248 Kan. 247, which would allow our courts to disregard the specific wording of the documents involved and, after taking testimony from all interested and involved parties, to determine the "intent" of the estate plan.

Patricia also cites Restatement (Second) of Trusts § 339 and Comment (*a*) (1957), which states that if the settlor is the sole beneficiary of the trust, the settlor can compel termination, even if the trust was specifically labeled irrevocable. Such is not the case here. Ellen was not the sole beneficiary of the trust involved herein. Mac and Bill were successor income beneficiaries after Ellen's death, and Mac, Bill, and Patricia were the remainder beneficiaries

as well. The trial court's finding that the trust "was solely for [Ellen's] benefit and she was the settlor, beneficiary and trustee thereof" and that "[t]he trust was not created for the Respondents' benefit and they had no beneficial interest in the Trust until Ellen Sanders' death," insofar as it attempts to assert that Ellen was the sole beneficiary, is erroneous.

Patricia's argument to us is principally based upon her construction of *Pickrell*, 248 Kan. 247, as well as two cases from other jurisdictions: *Moran v. Cornell*, 49 R.I. 308, 142 A. 605 (1928), and *Sanderson v. Aubrey*, 472 S.W.2d 286 (Tex. Civ. App. 1971).

In *Pickrell*, 248 Kan. 247, Syl. ¶ 4, we held:

"Under the facts of this case, where a conflict exists between an earlier executed will and a later amended inter vivos trust as to how the death taxes and the administration expenses are to be paid, the last instrument in time controls."

Strictly stated, the holding in *Pickrell* is limited to whether a later inter vivos trust can make a different provision insofar as it pertains to death taxes generated by the assets of the trust than what an earlier will might have stated as to the liability for death taxes and administration expenses. The *Pickrell* opinion makes no reference to conflicting provisions as to dispositive or beneficial interests and relates solely to an administrative question concerning apportionment of taxes. To be consistent with *Pickrell*, Ellen should have amended the dispositive provisions of her existing trust, as she had the right to do, or revoked the trust in its entirely.

Applying *Pickrell* to our present set of facts would be in direct conflict with the weight of authority throughout the country. Additionally, although there was a conflict between the provisions in the trust and the will in the *Pickrell* case, here the will does not conflict with the trust. Rather, Ellen's disposition of the assets held in her trust differs from her disposition of the assets forming her probate estate, which she had every right to do.

In the case before us, Ellen expressed no intent regarding the trust, and while the trial court's determination of her intent might in fact be correct, it could just as easily be incorrect. A much better rule established by the majority of the jurisdictions around the country is that the revocation of a trust requires an express state-

ment and cannot be accomplished through implication, especially by allowing oral testimony from outside the four corners of the document to determine intent.

The trial court's reliance on *Moran,* 49 R.I. 308, is misplaced. This case was decided before the Restatement of Trusts and cannot represent a rejection of the Restatement's rule. Secondly, a power of appointment was involved in *Moran,* which is different from the power of revocation. Finally, the authority of *Moran* is clearly undermined by a later holding, more directly on point, of the Rhode Island Supreme Court in *Union Trust Co. v. Watson,* 76 R.I. 223, 228, 68 A.2d 916 (1949), which held: "Where the settlor reserves a power to revoke the trust in a particular manner, he can revoke it only in that manner."

We further find that the trial court's and Patricia's reliance on *Sanderson,* 472 S.W.2d 286, is misplaced. There, a will specifically referred to an inter vivos trust and stated that the "same is now formally revoked." 472 S.W.2d at 287. The Texas court gave legal effect to the wording as specifically revoking the trust, in part because of a statute in Texas making every trust revocable by the trustor unless expressly made irrevocable. *Sanderson* did cite Restatement (Second) of Trusts § 330, Comment (*i*) as it relates to the situation "[w]here no method of revocation [is] specified," but this Comment would not be applicable in our case, as the Ellen M. Sanders Trust Agreement, dated July 23, 1990, specifically required that the revocation be made by Ellen during her lifetime by a writing delivered to the trustee specifying the terms of the amendment. *Sanderson* supports Bill's argument for the adoption of the *Lowry* rule referred to previously, but it does not justify the trial court's decision.

Patricia's argument that the similar legal rules in Kansas regarding wills and inter vivos trusts in the cases of spousal elective shares and gifts to foreign governments indicate that wills and inter vivos trusts are the same, is not persuasive. She also argues that both are testamentary in nature. However, such is not the case. A trust can and does come to immediate effect upon being established and funded, while a will never takes effect until the death of a testator. In fact, the legal rules regarding trusts and wills differ in many

ways, particularly regarding requirements for their creation and revocation. We cannot erase the distinction between the documents or convert one into the other for purposes of a legal analysis favorable to a party who would benefit from a determination based on parol evidence.

Patricia's argument that wills and inter vivos trusts are essentially the same would have us rewrite K.S.A. 59-611 to add the emphasized language: "No will *or will substitute* in writing shall be revoked or altered otherwise than by some other will in writing; or by some other writing of the testator." This we should not and will not do. It is not our place to rewrite the statute. If the legislature chooses to do so, that is its right. However, to do so here would be improper and would reject the almost unanimous weight of authority regarding revocation of trusts.

We recognize Mac's argument that if Frank Palmer was actually acting as the successor trustee when the will was executed, this would provide additional grounds for finding the trust revocation was ineffective. We need not reach or discuss that issue because we believe that even if Frank had not succeeded Ellen as trustee, her actions in executing the July 13, 1993, will failed to revoke her existing revocable trust.

While we could at this point discuss and analyze the numerous opinions from other jurisdictions which we have previously referred to as being cited in Annot., 81 A.L.R.3d 959 and in 4 Scott on Trusts, § 330.8, p. 364 n.10, it would only unduly lengthen this opinion to do so. The cases are of two general types: those dealing with wills which merely make some disposition of the settlor's estate in a manner inconsistent with the existing inter vivos trust and those involving wills in which a specific modification or revocation is clearly attempted. This latter class of cases is factually different from our facts and not deserving of any discussion except a statement that we decline to give credence to, or disaffirm Bill's argument that we should adopt as part of our decision, the *Lowry* rule from Illinois. The Lowry will contained specific statements revoking the trust, while the Sanders will contains no similar provisions. We do not issue advisory opinions, *Sheila A. v. Finney*, 253 Kan. 793, 796, 861 P.2d 120 (1993), and should not make comments

which could only be considered dicta and unnecessary to a decision on the matter in controversy. *Rodriguez v. Cascade Laundry Co.*, 185 Kan. 766, 770, 347 P.2d 455 (1959).

The rule of the cases similar to ours is clearly summarized in Annot., 81 A.L.R.3d at 961, where it is stated: "A general testamentary disposition is an ineffective exercise of a reserved power to revoke by written instrument even if the executed will is delivered to the trustee before the settlor's death."

Many of the cases cite with approval Comment (*j*) to Restatement (Second) of Trusts § 330, which requires the revocation to be in the manner specified and disapproves of attempts to do so by testamentary dispositions. This rule can be clearly applied to the fact situation we face in the present case.

We adopt the rule of the overwhelming authority in the United States and hold that the settlor of an inter vivos revocable trust who has reserved the power to amend or revoke the trust during the settlor's lifetime by a writing delivered to the trustee which specifies the terms of such amendment or revocation, does not amend or revoke the trust by the execution of a will void of any statement or provision relating to the existing trust.

Reversed and remanded with directions to the trial court to enter a finding that the will of Ellen M. Sanders dated July 13, 1993, has no legal effect on the assets covered by the Ellen M. Sanders Trust Agreement of July 23, 1990, as subsequently amended.