No. 57,378

In the Matter of the Estate of Burneta Adair, Deceased.

(703 P.2d 793)

Opinion filed July 26, 1985.

*Willard B. Thompson,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *Gerrit H. Wormhoudt, Edward J. Healy,* and *David G. Seely,* of the same firm, *John Dekker,* city attorney, and *Joe Allen Lang,* assistant city attorney, were with him on the briefs for appellant Wichita Art Museum.

*James J. McGannon,* of Regan & McGannon, of Wichita, argued the cause, and *Patrick J. Regan,* of the same firm, was with him on the brief for appellee Wilda Conner.

*Milo M. Unruh, Sr.,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, argued the cause, and *Kris J. Kuhn,* of the same firm, was with him on the brief for appellants-coexecutors.

The opinion of the court was delivered by

PRAGER, J.: This case involves a dispute between a charitable residuary beneficiary and a noncharitable residuary beneficiary, in a testate estate, over the method of apportionment of federal estate taxes. The coexecutors petitioned the district court for construction of the will and directions as to the payment of federal estate taxes. In their petition, the coexecutors presented the following questions for the court's determination:

" 'Are the amounts of the religious-charitable and public-use devises and bequests determined and deducted *before* the death taxes are calculated or are they determined *after* the death taxes are calculated? Stated another way, is a qualified religious-charitable or public-use beneficiary exonerated or freed from the impact of or the payment of any death taxes chargeable against an estate or against any interest flowing from the estate under the provisions of the Will?' "

The issues presented are strictly questions of law, the facts in

the case being undisputed. In determining the case, the Honorable Willis W. Wall, of the Sedgwick County District Court, filed a comprehensive journal entry of judgment which sets forth at length the undisputed facts, outlines the legal issues and the positions of the interested parties, and states the applicable rules of law and the reasons for the court's decision.

Because all of the issues are thoroughly analyzed and discussed therein, we set forth in full the trial court's findings of fact and conclusions of law:

## "FINDINGS OF FACT

"1. Burneta Adair died testate on May 9, 1983, a resident of Wichita, Sedgwick County, Kansas, leaving no surviving spouse nor any surviving children or grandchildren.

"2. Her Last Will and Testament, with Codicil attached, was duly admitted to probate in this Court, and Elwin L. Kroeker and Jerry J. Schaplowsky were appointed executors of her estate.

"3. Mrs. Adair left a gross estate of the value of approximately $3,900,000.00.

"4. Mrs. Adair's Will is dated March 11, 1976, and provides, in pertinent part, as follows:

"A. Under Article I, Mrs. Adair directed that 'just debts and funeral expenses' be paid as soon as practicable after her death.

"B. Article II makes specific bequests and legacies and is divided into three subparagraphs.

"(1) Subparagraph (A) provides bequests to members of her family and to her church. She makes a devise of Kingman County land, plus a cash legacy of $250,000.00, to her sister, WILDA CONNER. She makes a cash legacy of $5,000.00 each to other members of her family, and then provides a cash legacy of $50,000.00 to the Plymouth Congregational Church.

"(2) Subparagraph (B) makes generous cash legacies to seven 'faithful employees' totaling $285,000.00. provided they are in her employment at the time of her death.

"(3) Subparagraph (C) provides a cash legacy to Steve Agge with a direction that the executors pay him additional amounts for tuition if he is attending college.

"C. Under Article III, Mrs. Adair leaves all her personal jewelry to her sister, WILDA CONNER, with the direction that her said sister give two items of jewelry to Julie Benne.

"D. Article IV referred to her residuary estate as follows:

"All the rest, residue and remainder of my estate, real, personal. and mixed and wheresoever situate, I give devise and bequeath one-half (½) to my sister, Wilda Frances Young Conner. The remaining one-half (½) I give, devise and bequeath to the Wichita Art Museum as an endowment and direct that the sum received by the Wichita Art Museum be invested and the income therefrom be used for art scholarships or the acquisition of objects of art in the name of the Burneta Adair Endowment.'

"E. In Article V, Mrs. Adair provided for the payment of death taxes as follows:

" 'I direct my Executors to pay *all taxes* due on my estate to the Federal and State Governments, including all inheritance taxes due on any specific bequests as made in this my Last Will and Testament without the right of reimbursement from the beneficiaries of such specific bequests.'

"F. Article VI and VII granted the executors authority in the administration of the estate. Article VI provided that the executors 'shall liquidate all assets' of the estate prior to closing it, and the executors were directed to consult with Annie Lou Fulsom in the sale of decedent's home and personal property.

"G. Under Article VIII, Mrs. Adair names two persons, Jerry Schaplowsky and Julie Benne, to serve as executors without bond.

"5. By a Codicil executed on January 18, 1977, Mrs. Adair cancelled the bequest to Julie Benne because Julie Benne was then leaving her employment, and she replaced Julie Benne as executor by appointing Elwin L. Kroeker and Jerry L. Schaplowsky as executors.

"6. Mrs. Adair's sister, Wilda Conner, is the principal and favored beneficiary of Mrs. Adair's Will, having been mentioned in and having received substantial gifts under each of the three dispositive articles of the Will, namely, Articles II, III and IV.

"7. Plymouth Congregational Church is a religious body or entity, and is an entity within the scope of the qualifying definition set forth in 26 U.S.C. § 2055(a).

"8. The Wichita Art Museum is a tax-supported facility of the City of Wichita within the scope of the qualifying definition set forth in 26 U.S.C. § 2055(a).

"9. All taxes due on the estate to the Federal and State governments are to be paid from the assets in the residuary estate since, under Article V of the Will, Mrs. Adair directed her executors to pay these taxes.

"10. Mrs. Adair's Will makes no provision for the apportionment of the Federal Estate taxes among the beneficiaries.

"11. The beneficiaries receiving gifts under Article II and III of the Will are entitled to receive their respective gifts in full without deduction for Federal Estate taxes or Kansas Inheritance taxes, which taxes are to be paid by the executors from assets in the residuary estate, as directed by Article V of the Will.

"12. The Will contains no provision indicating any intention on the part of Mrs. Adair that the Wichita Art Museum is to be exonerated from sharing in the tax burden on the assets in the residuary estate.

"13. The language of Article IV of the Will, which provides for the disposition of the residuary estate, must be carefully scrutinized to ascertain the intention of the testator.

"A. In the first sentence, Mrs. Adair states that she gives one-half 'to my sister, Wilda Frances Young Conner.' This first sentence ends with a period, concluding the direction that one-half of the residuary shall pass to her sister. Wilda Conner is the first-named residuary beneficiary.

"B. The second sentence then begins 'The remaining one-half . . .' she gives to the Wichita Art Museum.

"C. Mrs. Adair's use of the words 'the remaining one-half' indicates her intention that the gift to the Museum is subordinate to the gift to Wilda Conner.

"D. The wording of Article IV indicates Mrs. Adair's intention that the gift to the Museum be indefinite in amount and to be whatever is in the second or remaining one-half of the residuary estate after payment of all expenses, taxes, fees, specific gifts and prior claims.

"14. The value of the assets in the residuary estate, prior to the calculation and payment of the death taxes, is approximately $2,200,000.00. The two residuary beneficiaries, Wilda Conner and the Wichita Art Museum, are each entitled to one-half of the residuary, or $1,100,000.00 each, subject to the payment of the death taxes.

"15. If the taxes are calculated in the manner urged by the Wichita Art Museum, the Museum would receive its $1,100,000.00 in full, and Wilda Conner would receive $456,000.00, since Wilda Conner's share of the residuary would be diminished by the payment of the entire burden of the death taxes.

"The Museum contends that the death taxes should be calculated as follows:

| | |
|---|---|
| $2,200,000 | value-residuary |
| -643,987 | death tax payments |
| $1,556,013 | net value residuary |
| 456,013 | Wilda Conner's share |
| $1,100,000 | Art Museum's share |

"16. If the taxes are calculated in the manner urged by Wilda Conner, the Art Museum and Wilda Conner would receive $677,642.00 each, since the death taxes would be paid prior to the division of the remaining residuary into the two half shares for the two beneficiaries.

"Wilda Conner contends that the death taxes should be calculated as follows:

| | |
|---|---|
| $2,200,000 | value-residuary |
| -844,715 | death tax payments |
| $1,355,285 | net value residuary |
| 677,642 | Wilda Conner's share |
| 677,642 | Art Museum's share |

"17. Under the Art Museum's calculations, the total death taxes payable by the estate will be $200,728.00 less than those payable under Wilda Conner's calculations. However, only the Art Museum will benefit under the Museum's calculations since its gift will increase by $422,358.00 and Wilda Conner's gift will decrease by $221,629.00.

"The net results of the two methods of calculating the taxes may be shown as follows:

| "Death Taxes Payable | Wilda Conner's Share of Residuary | Museum's Share of Residuary |
|---|---|---|
| Wilda Conner's Method: $844,715 | $677,642 | $ 677,642 |
| Museum's Method: 643,987 | 456,013 | 1,100,000 |

"18. There is no provision in the Will which would support any suggestion that Mrs. Adair intended the Will to be construed to permit the Art Museum to receive a larger share of the residuary estate than the share of Wilda Conner.

"19. There is no provision in the Will which would support any suggestion

that Mrs. Adair intended the Will to be construed in a manner most favorable to the Art Museum at the expense of her own sister, Wilda Conner.

## "CONCLUSIONS OF LAW

"1. The first responsibility of a court when the meaning of the language in a will is challenged is to determine from a consideration of all the language whether a conflict or ambiguity exists. *In re Estate of Graves*, 203 Kan. 762, 457 P.2d 71 (1969).

"2. Where, from an analysis of the entire instrument, no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions. *In re Estate of Graves, supra.*

"3. The Federal Estate Tax is a tax upon the transfer of an estate upon the death of the owner. It is not a tax upon succession and receipt of benefits under the law or under the Will. It is a death duty as distinguished from a legacy or succession tax. What the Federal Estate Tax law taxes is not the interest to which the beneficiaries succeeded on death, but the interest which ceased at death. *Y.M.C.A. v. Davis*, 264 U.S. 47, 68 L.Ed. 558, 44 S.Ct. 291 (1924).

"4. Congress intended that the Federal Estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the ultimate impact of the federal tax. *Riggs v. Del Drago*, 317 U.S. 95, 87 L.Ed. 106, 63 S.Ct. 109 (1942).

"5. A number of states have specific statutes which provide for apportionment of the burden of the Federal Estate tax. Generally those statutes cause each person receiving a distribution from the estate to bear that part of the tax which accrued by reason of the value of the property he is to receive. Kansas has not enacted any statute which provides for the apportionment of the Federal Estate taxes. *Jackson v. Jackson*, 217 Kan. 448, 536 P.2d 1400 (1975).

"6. The law of Kansas is applicable in the determination of where the burden of the Federal Estate tax falls. The Supreme Court of Kansas had consistently declared the law of Kansas to be that in the absence of anything in the Will to the contrary, the burden of the Federal Estate tax falls on the residuary. *Central Trust Co. v. Burrow*, 144 Kan. 79, 58 P.2d 469 (1936); *In re Estate of West*, 203 Kan. 404, 454 P.2d 462 (1969); *Spurrier v. First National Bank of Wichita*, 207 Kan. 406, 485 P.2d 209 (1971).

"7. Mrs. Adair's Will is clear and unambiguous as to her intention that the death taxes shall be paid from her residuary estate. Under Article V of the Will, she directs the executors to pay all taxes on her estate to the Federal and State governments, including all inheritance taxes due on any specific bequests without the right of reimbursement from the beneficiaries of such specific bequests.

"8. It was wholly within the power of Mrs. Adair to exempt the Wichita Art Museum from payment of the death taxes by specific direction to her executors, if she chose. Mrs. Adair's Will contains no provision indicating an intention that the Wichita Art Museum be exonerated from sharing in the burden of the death taxes. It must be presumed that when Mrs. Adair declined to exercise her power in this

respect, that she intended the incidence of the taxes to be where otherwise by law it must be. *Central Trust Co. v. Burrow, supra.*

"9. Mrs. Adair is presumed to have known the law at the time she made her Will. She made her Will to be carried out as written. What she did by her Will was to place the burden of the death taxes on the residuary without any instruction that the Wichita Art Museum was to be relieved from sharing in the liability for the death taxes. This Court is without authority to revamp the Will or the law by advising the executors to compute the taxes as if the law or the Will exempted the Wichita Art Museum from liability for such taxes. *Central Trust Co. v. Burrow, supra.*

"10. Where the residuary estate is disposed of in shares and the burden of the Federal Estate tax falls on the residuary estate, each share of the residuary must bear its proportionate part of the estate tax which is deducted before the residuary shares are determined, even though particular shares of the residuary are altruistic gifts, the value of which is deducted from the gross estate for Federal Estate tax purposes. *Y.M.C.A. v. Davis, supra.*

"11. There is nothing in 26 U.S.C. § 2055 which exempts the recipients of altruistic gifts from taxation; it only requires a deduction of the value of such gifts in calculating the amount of the estate which is to measure the tax. It exempts the estate from a tax on what is thus deducted. *Y.M.C.A. v. Davis, supra.*

"12. The residue of an estate is that which remains after discharging all legal and testamentary claims against the estate. The benefaction conferred by the residuary clause of a will is only that which remains after all prior and paramount claims upon the estate of the testator are satisfied. *In re Estate of Barclay,* 215 Kan. 129, 523 P.2d 376 (1974).

"13. The gift of a share of the residuary estate is, and is intended by the testator to be, indefinite in amount, and to be whatever is left after paying funeral expenses, attorneys' fees, executors' compensation, administrative expenses, debts of the decedent, and taxes, *Y.M.C.A. v. Davis, supra; In re Estate of West,* 203 Kan. 404, 454 P.2d 462 (1969).

"14. The Federal statute which provides the deduction for altruistic gifts, 26 U.S.C. § 2055, itself contemplates that the taxes will be payable out of such gifts, since it requires that the allowable deduction for such gifts shall be the amount of the gift reduced by the amount of such taxes. *Harrison v. Northern Trust Co.,* 317 U.S. 476, 87 L.Ed. 407 [, 635 S.Ct. 361] (1943).

"15. When a testator devises a percentage of his estate, or any fractional part thereof, to named beneficiaries, the reference is to a percentage of the net or distributable part of the estate. *In re Estate of West, supra.*

"16. Mrs. Adair's gift to the Wichita Art Museum was a fractional share (one-half) of her residuary estate. It was intended by her to be indefinite in amount and to be one-half of whatever was left after the payment of all claims, expenses, fees, prior bequests, legacies and devises, and all death taxes. Her intention is clearly imparted by her use of the words 'remaining one-half' in describing the gift to the Museum, which is the very last beneficiary named in her Will.

"17. The purpose of Congress in providing for the marital deduction was to equalize as nearly as possible estate and gift tax liability between community-property and common-law states. The only way such equality may be accomplished is for the surviving spouse to be relieved from payment of any portion of

the Federal Estate tax. The marital deduction is available to a surviving spouse by reason of the intent of Congress to *exempt* the marital deduction share from the Federal Estate tax. *Spurrier v. First National Bank in Wichita, supra.*

"18. Under Kansas law as defined by the Supreme Court of Kansas, the marital deduction is in fact an *exclusion.* The property, or value thereof, set aside to the surviving spouse is not considered part of the decedent's estate for Federal Estate tax purposes. *In re Estate of Rooney,* 186 Kan. 200, 349 P.2d 916 (1960).

"19. The Supreme Court of Kansas has made a distinction between the marital deduction and other deductions allowed to an estate for estate tax purposes. The marital deduction property is *excluded* from the taxable property of the estate. With respect to other deductions the property itself is included but the value equal to the deduction is subtracted in arriving at the taxable estate. *In re Estate of Rooney, supra.*

"20. The deductions allowed to an estate for bequests to altruistic institutions are provided pursuant to an altogether different Congressional purpose. Congress intended to encourage gifts to altruistic institutions, *not by specific exemption of such gifts,* but by allowing the gifts to be deducted from the gross estate in determining the net taxable value of the estate. *Y.M.C.A. v. Davis, supra.*

"21. The language of the Will and the fact that Wilda Conner received gifts under all three of the dispositive articles of the Will clearly manifest Mrs. Adair's intention that her sister, Wilda Conner, was to be considered her principal beneficiary and the favored object of her bounty. In Kansas, a will is to be construed in the light most favorable to the blood relatives of the testator. *Baldwin v. Hambleton,* 196 Kan. 353, 411 P.2d 626 (1966).

"22. If the taxes are calculated in the manner suggested by the Wichita Art Museum, the total taxes payable by the estate will be reduced by approximately $200,000.00, and the gift to the Museum will be increased from $677,642.00 to $1,100,000.00, an increase of over 62%. But only the Art Museum will benefit from this method of calculation. Wilda Conner's share of the residuary will be reduced from $677,642.00 to $456,013.00, a decrease of over 33%. This is not an equitable result even if this Court had the power, under principles of equity, to order the executors to disregard the law and the clear provisions of the Will in the computation of the death taxes. The duty of the Court is to construe not to construct the Will. *In re Estate of Graves, supra.*

"23. This district court must follow the existing Kansas law in determining the issue presented to it. If the Kansas Legislature sees fit to enact an apportionment statute relieving the donees of altruistic gifts from the burden of the estate taxes, it can do so by appropriate legislation. If a judicial rule of 'equitable apportionment' is to be adopted in Kansas, such a rule should be first promulgated and defined by the Supreme Court of Kansas, not by a district court.

"24. The Court concludes that the method of calculating the death taxes suggested by the Wichita Art Museum is not authorized under Kansas law or under the clear provisions of Mrs. Adair's Will.

"25. The questions presented by the executors in the petition before the Court are:
 " 'Are the amounts of the religious-charitable and public-use devises and bequests determined and deducted *before* the death taxes are calculated or

are they determined *after* the death taxes are calculated? Stated another way, is a qualified religious-charitable or ·public-use beneficiary exonerated or freed from the impact of or the payment of any death taxes chargeable against an estate or against any interest flowing from the estate under the provisions of the Will?'

The answer to the first question is *after*. The answer to the second question is *no. Harrison v. Northern Trust Co., supra; Y.M.C.A. v. Davis, supra; Central Trust Co. v. Burrow, supra.*

"26. In her Will, Mrs. Adair directed that the executors pay the death taxes. Under Kansas law, the Federal Estate taxes are payable by the executors from the residuary estate. The Federal Estate taxes must first be calculated and paid *before* the value of the net distributable residuary estate is determined. Wilda Conner and the Wichita Art Museum, as the residuary beneficiaries under Mrs. Adair's Will, are each entitled to receive an equal one-half share of the net distributable residuary estate.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the above Findings of Fact and Conclusions of Law are made a part of the Judgment of the Court, and that judgment is hereby entered on the Executors' Petition for Construction of Will and Instructions in accordance with said Findings and Conclusions.

"IT IS FURTHER ORDERED that the Executors are directed and instructed to calculate the death taxes chargeable against the Estate of Burneta Adair in the manner set forth in Finding of Fact No. 16 above, so that Wilda Conner and the Wichita Art Museum, as the residuary beneficiaries under the decedent's Will, shall each receive an equal one-half share of the net distributable residuary estate."

After a careful analysis of the legal principles and supporting cases set forth in the trial court's conclusions of law and the reasons given by the district court for its judgment, as set out above, we have concluded that the trial court's journal entry of judgment assigns sound and controlling reasons for its order and judgment, and effectively answers the questions raised and argued on this appeal. We know of no good reason why this opinion should be burdened with extended discussion and consideration of contentions which have already been correctly disposed of in the trial court's conclusions of law.

We approve of the district court's disposition of the case as set forth above. The federal estate tax is imposed as an excise tax upon the transfer of an estate upon the death of the owner. It is not a tax upon the succession and receipt of benefits under the law or the will. The federal estate tax does not tax the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death. It was wholly within the power of the testatrix to exempt her charitable gift to

the Wichita Art Museum from payment of the federal estate tax by specific directions to her executors, if she chose.

In conclusion, we note a recent case which is not cited by the trial court. In *Dittmer v. Schmidt*, 235 Kan. 697, 683 P.2d 1252 (1984), this court held that, in the absence of any expressed intent to the contrary, the burden of the federal estate taxes falls upon the residuary estate rather than upon a specific bequest. *Dittmer* stands for the legal principle that, after the residuary estate left in a decedent's will is exhausted, the balance of the federal estate tax burden is payable out of the remaining property left by the decedent to the beneficiaries, equitably apportioned among the beneficiaries according to the value of the property each beneficiary receives. The decision in *Dittmer* does not change the basic principles of law established in the prior decisions of this court which are discussed in depth in the conclusions of law adopted from the district court.

The judgment of the district court is affirmed.