No. 64,620

STANFORD W. TROYER, *Appellant,* v. KEN GILLILAND and
VICKI GILLILAND, *Appellees.*

(799 P.2d 501)

Opinion filed October 26, 1990.

*Gary House*, of Sedan, argued the cause and was on the brief for appellant.

*John M. Wall*, of Sedan, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

SIX, J.: This case addresses acquiescence in a trial court's judgment as a bar to contesting the judgment on appeal. The dual nature of the question before us relates to whether the appellant, Stanford Troyer, (the plaintiff below) has acquiesced in the money judgment awarded by the trial court and, if so, whether he may appeal that judgment.

Troyer filed this action to terminate a joint venture agreement, divide joint venture assets, and recover damages resulting from alleged wrongful acts of defendants Ken and Vicki Gilliland. The Gillilands responded with an answer and cross-petition seeking damages and an equitable division of joint venture property. Troyer appeals the trial court's division of joint venture assets and the trial court's denial of damages resulting from the sale of joint venture assets by the Gillilands.

We hold that Troyer has acquiesced in the judgment awarded to him by the trial court. His appeal is dismissed.

### Facts

Troyer owns 1,480 acres of land located in Chautauqua County. The improvements on the land include a four-bedroom house, a dairy barn, and several outbuildings.

In August 1985, Troyer and the Gillilands entered into an agreement, concerning the Chautauqua County land, which was

reduced to writing by Troyer and signed by both parties. The agreement launched a joint venture known as Bee Creek Farms (BCF). The BCF joint venture was to grow grain crops, operate a dairy, and raise livestock.

Although not stated in writing, the parties agreed that the Gillilands could live on the farm rent free.

In August 1987, the parties signed another written agreement drafted by Troyer containing certain modifications of the 1985 agreement. The 1987 agreement provided that the Gillilands would own one-half of all livestock if the agreement was still in effect on August 28, 1989, and if the herd had increased to 100 head.

Troyer later became interested in selling the farm. In November 1988, he demanded that the Gillilands surrender most of the assets and by January 1, 1989, move off the farm. The Gillilands refused. Further negotiations between the parties and mediation by the Chautauqua County Extension Office failed to resolve the dispute. This litigation followed.

The trial court found that the only apparent reason Troyer terminated the 1987 agreement was to prevent the Gillilands from realizing the benefits of the agreement. This finding was considered in dividing the BCF assets. The trial court reasoned that Troyer's action of diverting the milk checks and seizing BCF funds caused damages and depreciation of the cattle. Troyer's claim for damages resulting from the sale of cattle was denied. The trial court constructed an accounting and divided the BCF assets. Troyer was awarded $12,125.40. The Gillilands received all of the farm equipment.

The Gillilands caused a writ of execution to be issued for the machinery in Troyer's possession. The writ was returned partially satisfied. Troyer initiated an order of garnishment issued on the Gillilands' bank to collect his money judgment. The order was returned showing no property held by the garnishee bank.

Troyer filed his notice of appeal on December 5, 1989.

In May of 1990, the Gillilands filed with the Court of Appeals a motion to stay further proceedings pending the final determination of the appeal. The motion was denied on present showing.

Troyer filed a praecipe for execution in the trial court seeking delivery of three pieces of farm equipment, two of which had

been previously taken pursuant to the writ of execution initiated by the Gillilands. The sheriff took possession of the equipment on June 7, 1990. On June 11, 1990, the Gillilands paid $12,125.40, the amount of Troyer's judgment, into court and secured a return of the farm equipment.

On June 22, 1990, upon Troyer's motion, the trial court ordered the $12,125.40, paid by the Gillilands, distributed as follows: (1) $60 to the sheriff for expenses in execution upon the farm equipment; (2) $55 to Troyer (as plaintiff) for application on court costs; and (3) $12,010.40 to Troyer to be applied against his judgment (and interest) rendered against the Gillilands.

After the case was set for appellate argument, the Gillilands filed a motion to dismiss Troyer's appeal.

We denied the motion to dismiss with leave to renew at oral argument.

### Acquiescence in the Judgment

The Gillilands argue in their motion to dismiss that Troyer has acquiesced in the judgment of the trial court by seeking and securing an order for distribution of funds. We agree.

Troyer, in his answer in opposition to the Gillilands' motion to dismiss, states:

"Appellant [Troyer] appealed the decision of the District Court of Chautauqua County, Kansas, *because he contended that the judgment granted to him against Appellees* [the Gillilands] *was insufficient.*

"[T]he trial court's judgment or decree involves distinct and severable matters, specifically *that money judgment was granted to Appellant which Appellant contends to be insufficient*; that a separate judgment to Appellees was granted against Appellant for transfer of title to equipment and farm machinery . . . ." (Emphasis added.)

Troyer is not entitled to receive distribution of $12,010.40 of his $12,125 judgment and then claim on appeal that the judgment is insufficient. Troyer's actions are inconsistent.

In *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, Syl. ¶ 6, 597 P.2d 1080 (1979), we stated:

"The general rule, subject to certain exceptions, is that a party to litigation who has acquiesced in the judgment of the trial court either by assuming the burden of such judgment or by accepting the benefits thereof will be deemed to have acquiesced in such judgment and may not thereafter adopt an inconsistent position and appeal from such judgment."

Troyer contends that the trial court's judgment involves distinct and severable matters. He argues that the money judgment awarded him, which he claims is insufficient, is separate and distinct from the portion of the judgment awarding equipment to the Gillilands.

In *Brown* we acknowledged an exception to the general rule: "[A]ny party to an appeal who accepts such payment [of judgment] shall not be deemed to have acquiesced in the judgment so long as the issues on appeal do not affect the obligation for the payment of or the right to receive such portion of the judgment." 226 Kan. at 231.

This exception offers no aid to Troyer in sustaining his appeal. The exception is not applicable to this case.

Troyer's petition sought an equitable division of BCF assets. The trial court construed the joint venture agreements, established an accounting, and divided BCF assets. The trial court's memorandum decision (containing extensive findings of fact) awarded money to Troyer and equipment to the Gillilands. The memorandum decision, which constituted the journal entry of judgment, effected a division of BCF assets. The money judgment in favor of Troyer and the awarding of the equipment to the Gillilands are not distinct and severable matters.

Troyer is challenging, in this appeal: (1) the sufficiency of his money judgment, and (2) the trial court's decision to award the machinery to the Gillilands. In effect, Troyer is challenging the trial court's division of joint venture assets.

Troyer relies on *City of Topeka v. Stauffer Communications, Inc.*, 7 Kan. App. 2d 353, 642 P.2d 120 (1982), in support of his contention that the trial court's decision, in the case at bar, involved separate and distinct judgments.

*Stauffer Communications* is distinguishable from the instant action. *Stauffer Communications* considered an appeal from a ruling in a declaratory judgment action. The issue was whether fire inspection records, and other memoranda in Topeka's fire inspection files, all relating to public premises, were "official public records" subject to inspection under K.S.A. 45-201 *et seq.* (Ensley 1981).

After the trial court ruled against the City, Topeka delivered the Topeka Ramada Inn fire inspection file which Stauffer Communications had initially requested. On appeal, Stauffer Communications contended the City had acquiesced in the judgment. The Court of Appeals agreed with the City's contention that the delivery of one file was not acquiescence because each day new documents were commingled with the inspection reports. The issue in litigation related to fire inspection records in general, not to any specific file within that category. Topeka did not acquiesce in the judgment by releasing one specific file.

Troyer has acquiesced in the judgment of the trial court. The Gillilands' motion to dismiss the appeal is granted.

The Gillilands have filed a motion for an award of attorney fees and costs pursuant to Rule 7.07 (1989 Kan. Ct. R. Annot. 37). Although not specifically asserted, we assume the Gillilands claim Troyer's appeal was taken frivolously "or only for the purpose of harassment or delay." We do not agree. The motion for attorney fees and costs is denied.

Appeal dismissed.