806 P.2d 1007 (1991)
248 Kan. 257
In the Matter of the ESTATE OF Joyce Evans PICKRELL, Deceased.
In the Matter of the JOYCE EVANS PICKRELL TRUST.
No. 63777.
Supreme Court of Kansas.
March 1, 1991.
*1008 Kris J. Kuhn, of Arn, Mullins, Unruh, Kuhn & Wilson, Wichita, argued the cause, and John C. Nodgaard, and Dana D. Preheim, of the same firm, were with him on the brief, for appellants Thomas R. Pickrell and Patricia M. Pickrell.
Don B. Stahr, of Bever, Dye, Mustard & Belin, Wichita, argued the cause and Gregory L. Franken, of the same firm, was with him on the briefs, for appellees Carl W. Sebits and BANK IV Wichita, N.A., Trustees of the Joyce Evans Pickrell Trust and Executors of the Estate of Joyce Evans Pickrell, Deceased.
John W. Sumi, guardian ad litem, of Adams, Jones, Robinson & Malone, Chartered, Wichita, argued the cause and was on the brief, for appellee Jennifer Ann Pickrell.
Kurt A. Harper, of Sherwood, Hensley, Harper & Gregory, Wichita, argued the cause and was on the brief, for appellees Patricia Pickrell Smith Bellis, Martin Lloyd Smith, Thomas Eugene Smith, Gayla Joyce Smith, and Laura Lynn Smith Menhennett.
LOCKETT, Justice:
The Court of Appeals affirmed the trial court's apportionment of the death taxes and administration expenses between the Joyce Evans Pickrell Trust and the Estate of Joyce Evans Pickrell. In re Estate of Pickrell, 14 Kan.App.2d 375, 791 P.2d 41 (1990). Thomas Pickrell and Patricia Pickrell, son and daughter-in-law of Joyce Evans Pickrell, deceased, seek review of the Court of Appeals' decision that where a conflict exists between a will and a later amended inter vivos trust, the last instrument expressing the deceased's intent controls.
On June 9, 1982, Joyce Pickrell executed both her last will and testament and a trust indenture establishing the Joyce Evans Pickrell Trust. The trust indenture provided that upon Joyce Pickrell's death the trust was to be divided into four equal shares among her son, Thomas Pickrell; her daughter, Patricia Pickrell Smith Bellis; and two nieces. Article IV, Section 12 of the trust indenture required the trustees to pay all taxes imposed on the trust.
Five years later, Joyce Pickrell amended Article IV, Section 12 of the Joyce Evans Pickrell Trust. The amendment to the trust stated that it was the settlor's intent for the trust assets, the beneficiaries of the trust, and the estate beneficiaries to bear their proportionate share of the federal estate taxes, the state inheritance taxes, and the administration expenses.
Joyce Pickrell died on October 7, 1987. The will was admitted to probate on January 11, 1988. Her survivors are her son and daughter, five grandchildren, and the two nieces named in her inter vivos trust. Her taxable assets were $4,984,362.45. The federal and state death taxes paid at the time of appeal were $2,097,667.90.
The dispute is over the trustees' interpretation of Article IV, Section 12 of the amended trust indenture which authorized and directed them to pay to the Joyce Pickrell estate the trust's proportionate share of death taxes and administration expenses based on the ratio of trust assets to the total taxable estate. The only heir to disagree with the trustees' interpretation is the son, Thomas Pickrell and his wife. They argue that Article IV, Section 12 of the trust as amended is inconsistent with the second article of the will, which directs the executors to pay taxes and expenses out of the residuary estate and not to collect any part of taxes or expenses from any *1009 beneficiaries. They claim the will controls the payment of taxes and expenses.
As a result of the disagreement, the trustees filed a petition requesting construction of the trust. One week later Thomas Pickrell and his wife had filed a petition for construction of the will. The district court consolidated the petitions. The district court found the language of the trust amendment was clear and concise and contained the latest expression of the settlor's intent as to the apportionment of taxes and expenses; therefore, there was no inconsistency between the will and the trust indenture. The district court ordered the trustees to distribute to the executors of the estate an amount representing the trust's proportionate share of the death taxes and administration expenses.
Thomas Pickrell and his wife appealed, contending: (1) where there is a conflict between a will and a trust indenture, the will controls and the contrary instructions in the trust indenture are ineffective; (2) the district court's decision allows the federal estate tax burden to be altered or shifted by an apportionment clause of an inter vivos trust, even though the trust indenture has not been executed with the testamentary requirements or safeguards required for a will; and (3) the district court's decision is contrary to the Kansas rule that "in the absence of anything in the will to the contrary, the burden of federal estate taxes falls on the residuary estate." Spurrier v. First National Bank of Wichita, 207 Kan. 406, 485 P.2d 209 (1971). (Emphasis added.) See In re Estate of Adair, 237 Kan. 773, 703 P.2d 793 (1985).
Although the Court of Appeals affirmed the district court's decision that the trust as amended was the latest expression of the settlor's intent, each panel member affirmed the district court on different grounds. Before reviewing the various reasonings of the panel members, it is necessary to state the pertinent provisions in the two documents used by Pickrell for her estate plan.
The pertinent parts of Joyce Pickrell's will stated:
"SECOND: I direct that all Federal estate taxes, imposed upon or in relation to any property required to be included in my gross estate for Federal estate tax purposes, and all inheritance and succession or transfer taxes payable upon or resulting from or by reason of my death, whether or not attributed to properties subject to probate administration, and further, all expenses of administration of my estate, shall be paid out of the residue of my probate estate. My executors shall not be reimbursed for, nor collect, any part of such taxes or estate administration costs from any person, legatee, devisee, or beneficiary under this Will, nor shall there be any charge or recovery therefore upon the basis of proration, apportionment, contribution, distribution, or otherwise, against estates not included in my probate estate, or against persons not deriving benefits under this Will. [Emphasis added.]
. . . .
"NINTH: I direct my executors to cooperate with the Trustees of that certain Trust Indenture dated June 9, 1982, to the extent that the purpose of said Trust shall be fully accomplished and satisfied.
. . . .
"SIXTEENTH: Provisions in this Last Will and Testament for my children Patricia Pickrell Smith and Thomas Ross Pickrell take into consideration the generous provisions made for each of them under the Last Will and Testament by their father Lloyd R. Pickrell and subsequent gifts to each of them by the Testatrix during her lifetime and by the provisions of that certain Trust Indenture dated June 9, 1982, to which reference is made in Article Ninth hereof."
The pertinent parts of the June 9, 1982, trust indenture are:
"ARTICLE II  REVOCABILITY
"The Settlor shall have the right at any time and from time to time to change, alter, modify or revoke the trust hereby created and/or to withdraw the trust estate in whole or in part by an instrument in writing, executed by the *1010 Settlor and delivered to the Trustees." (Emphasis added.)
"ARTICLE IV  POWERS AND DUTIES OF TRUSTEES
. . . .
"Section 12. The Trustees shall have the power to sue and be sued on or in respect of any matter connected with the trust estate, to compromise suits and claims, to pay all taxes and governmental charges of any kind or character, which may be imposed upon or on account of said trust estate; to appoint attorneys and to receive compensation and to pay all necessary and proper expense of said trust estate, and such other and further powers as may be necessary and incidental for the accomplishment of the purposes of this trust."
Section 12 of Article IV of the Trust Indenture was amended on April 23, 1987, to include:
". . . provided however, and notwithstanding any of the general powers hereinabove granted the Trustees, upon the death of Settlor, this Trust being then in existence, said Trustees are hereby directed and authorized to pay and distribute to Settlor's executors or administrators, as may be appointed, from the assets of the Trust, such portion of the total Federal estate, State inheritance taxes and administration expenses, determined to be due and payable by reason of Settlor's estate, upon and by reason of Settlor's death, in the share or proportion that the value of the assets of the Trust distributable upon the death of Settlor shall bear to the total value of all assets, including the value of the assets of this Trust, as included in Settlor's estate in determining the taxes due and payable, and administration expenses payable by Settlor's estate. It is Settlor's intent by the preceding sentence that the Trust assets, the share of each beneficiary of the Trust, and the shares of the beneficiaries of Settlor's estate outside this Trust, be charged with and bear respective their proportionate share of all Federal estate, State inheritance tax and expenses of administration determined to be due and payable by Settlor's estate." (Emphasis added.)
Judge Rulon, author of the Court of Appeals controlling opinion, correctly states the basic principle that when a will is challenged the trial or appellate court's first duty is to determine whether the will is ambiguous. In re Estate of Brecklein, 6 Kan.App.2d 1001, 1007, 637 P.2d 444 (1981). He points out that, when the testator's intent is clearly and unequivocally expressed, the will must be enforced in accordance with its provisions. In re Estate of Wernet, 226 Kan. 97, Syl. ¶ 1, 596 P.2d 137 (1979). He then references the basic principles of will construction. Russell v. Estate of Russell, 216 Kan. 730, 534 P.2d 261 (1975). Judge Rulon observes that the rules which govern will construction are also used for construing a trust, i.e., the settlor's intent is to be determined from the four corners of the trust instrument. In re Estate of Sutcliffe, 199 Kan. 686, 692, 433 P.2d 389 (1967).
Judge Rulon agreed with the district court's finding that both the will and the amended trust indenture were unambiguous. Therefore, he did not need to use judicial construction to determine the decedent's intent. Judge Rulon noted that the language of the will did not specifically prohibit the executors from accepting the trustees' proffer of the trust's proportionate share of taxes and administration expenses.
Judge Rulon noted that K.S.A. 79-1564(d), which provides that each distributive share of estate assets will bear a proportionate share of the inheritance taxes, permits the decedent to avoid this statutory scheme by so directing in either a will or a trust agreement. Judge Rulon stated that an inter vivos trust, which is part of a coordinated estate plan, may include a provision instructing the trustee to pay the trust's ratable share of the death taxes and expenses. See Nothern and Wachter, The Ultimate Burden of the Federal Estate Tax in Kansas  A Dilemma for Executors, 17 Washburn L.J. 231, 244-49 (1978).
*1011 Judge Rulon observed that, while better drafting could have made the tax provisions more coordinated between the two documents, they were still consistent with each other. Judge Rulon rejected the Pickrells' argument that the trust amendment was ineffective, determining that such reasoning was not consistent with Joyce Pickrell's last clear statement and would defeat the decedent's directions for payment of inheritance taxes and administration expenses.
Judge Larson concurred, finding there was a direct conflict between the second article of the will and the subsequent amendment to the trust indenture. He stated that the use of shall rather than may in the will is to be construed as mandatory, directing the executors not to accept any "recovery" from any beneficiary. After noting the trust agreement, as amended, directs the trustees to pay to the estate the trust's share of inheritance taxes, Judge Larson concluded that inconsistency between the will and the trust agreement is actual and existing, not perceived.
Finding no Kansas case on point, Judge Larson looked to other jurisdictions and legal authorities to determine which instrument controls when a conflict exists between an earlier executed will and a later amended inter vivos trust. Citing In re Estate of Strohm, 241 So.2d 167 (Fla.Dist. App.1970); Matter of Osborn, 8 Misc.2d 859, 866, 166 N.Y.S.2d 446 (1957); Annot., 69 A.L.R.3d 122, 215; and 42 Am.Jur.2d, Inheritance, Etc., Taxes § 352; for authority, Judge Larson determined where a conflict exists between the provisions of a trust agreement and the provisions of a will, the later instrument in time controls.
In his concurring opinion, Judge Larson acknowledged the Pickrells' contention that the will's provisions should control because "a will speaks from the time of the testator's death, unless it plainly shows a contrary intention, and is to be construed as operating according to conditions then existing," citing In re Estate of Laue, 225 Kan. 177, 182, 589 P.2d 558 (1979). He points out that the rule making a will speak as though executed immediately before the death of the testor relates to the effect and operation of the instrument rather than to its construction. To determine the intent of the testator, the will is to be construed as of the date of execution. See In re Estate of Wernet, 226 Kan. at 106, 596 P.2d 137. Based on the court's primary function to ascertain and carry out the decedent's intent (In re Estate of Cline, 170 Kan. 496, 227 P.2d 157 [1951]), Judge Larson found that the last document executed by Joyce Evans Pickrell, the amended inter vivos trust, clearly and plainly represented her intent.
Judge Rees concurred with Judge Larson that the will and trust indenture were inconsistent and in conflict and urged affirmance of the trial court based on a theory of last expressed intent. Judge Rees narrowly applied the rule, stating that the rule of last expressed intent as to determining responsibility for payment of death taxes should only be applied when there is a conflict between will and trust instruments, and not when another instrument later in time creates a conflict. He found that using the rule in this manner is in accord with provisions of the Kansas Inheritance Tax Act, K.S.A. 79-1537d and K.S.A. 79-1538.
Though all members of the panel agreed that Joyce Pickrell's use of the will and an inter vivos trust was an integral part of her estate planning, no member of the panel agreed on the correct course of law in affirming the trial court. We are, therefore, required to select the course to be followed in this case.
The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court. Kennedy & Mitchell, Inc. v. Anadarko Prod. Co., 243 Kan. 130, 133, 754 P.2d 803 (1988). The will and the trust indenture must be considered and construed together to determine which document shall govern the apportionment of death taxes and the expenses of administration. Can an inter vivos trust, amended after the execution of a will, directing the trustee to pay to the estate's executors the trust's apportionment of taxes and administration expenses, *1012 be given effect where the will directs that taxes and administrative expenses must fall on the residuary estate?
The right of a testator to designate who or what portion of his or her estate is to bear the burden of estate or inheritance taxes has been recognized by the legislature. K.S.A. 79-1564(d), which governs inheritance taxes, provides:
"The taxes imposed under the provisions of this act shall be paid at the expiration of nine (9) months after the death of the decedent. Such taxes shall be payable from the assets of the estate or proceeds therefrom, in order, so far as practicable, that each distributed share of the estate shall bear a just and equitable proportion of said taxes unless otherwise directed by the will of the decedent or trust agreement." (Emphasis added.)
Joyce Pickrell's will requires that all taxes and costs of administration be paid from the residuary estate while her inter vivos trust indenture as amended directs the trustees to pay the trust's proratable share of the death taxes and costs of administration. These provisions of her will and trust indenture conflict. Though the directions in the will and the trust conflict with each other, they do not conflict with K.S.A. 79-1564(d). Both documents are integral parts of Joyce Pickrell's estate planning. It is necessary to resolve the conflict between the will and the trust indenture.
The Pickrells argue that the Court of Appeals' decision is not in accord with this court's longstanding holding that in the absence of anything in the will to the contrary, the burden of the federal estate taxes falls on the residuary estate. In re Estate of Adair, 237 Kan. 773, 703 P.2d 793; Dittmer v. Schmidt, 235 Kan. 697, 683 P.2d 1252 (1984); Spurrier v. First National Bank of Wichita, 207 Kan. 406, 485 P.2d 209 (1971); In re Estate of West, 203 Kan. 404, 454 P.2d 462 (1969); Central Trust Co. v. Burrow, 144 Kan. 79, 58 P.2d 469 (1936). But cf., Wendland v. Washburn University, 8 Kan.App.2d 778, 667 P.2d 915 (1983) (absent contrary directions, Kansas inheritance taxes to be paid from estate assets by distributive share). According to the Pickrells, the Court of Appeals' decision allows the federal estate tax burden to be altered or shifted by an apportionment clause contained in an inter vivos trust, executed without following the statutory requirements mandated by Kansas law for a valid will. The Pickrells argue the decision elevates an inter vivos trust amendment to the level of a codicil to a will and abrogates the statutory requirement that the burden of federal taxes fall on the residuary estate. In re Estate of Adair, 237 Kan. 773, 703 P.2d 793 (1985). See Spurrier v. First National Bank, 207 Kan. at 409, 485 P.2d 209.
In construing a will courts must (a) arrive at the intent of the testator from an examination of the whole instrument, if consistent with rules of law, giving every single provision thereof a practicable operative effect, (b) uphold it if possible, (c) avoid any interpretation resulting in intestacy when possible, (d) give supreme importance to the intention of the testator, and (e) when the language found in such instrument is clearly and unequivocally expressed, determine the intent and purpose of the testator without resort to rules of judicial construction applicable to the interpretation of an instrument which is uncertain, indefinite, and ambiguous in its terms. Russell v. Estate of Russell, 216 Kan. 730, Syl. ¶ 1, 534 P.2d 261.
Did Joyce Evans Pickrell in her estate plan use an amendment to the inter vivos trust to shift the burden of federal estate taxes from the residuary estate as required by her earlier executed will? If the text of the trust indenture is plain and unambiguous, the intent of the trustor (settlor) can be ascertained from the language used. In re Estate of Hauck, 170 Kan. 116, 223 P.2d 707 (1950); Bayless v. Wheeler-Kelly-Hagny Trust Co., 153 Kan. 81, 109 P.2d 108 (1941). Where construction is necessary the court must put itself in the situation of the trustor when the trustor made the trust instrument and, from consideration of the language used in the entire instrument determine the intention of the trustor. Dyal v. Brunt, 155 Kan. 141, *1013 123 P.2d 307 (1942); In re Estate of Hauck, 170 Kan. 116, 223 P.2d 707. The cardinal rule is that the intention of the trustor as gathered from the whole instrument must control unless contrary to settled principles of law. In re Estate of Sutcliffe, 199 Kan. at 692, 433 P.2d 389; In re Estate of Hauck, 170 Kan. 116, 223 P.2d 707; Calkin v. Wallace, 160 Kan. 760, 165 P.2d 224 (1946).
Since Kansas has no case on point, we will review decisions of other jurisdictions. As Judge Larson pointed out, the general rule from other jurisdictions is, in case of a conflict between the provisions of a will and an inter vivos trust, the later instrument in time controls. In re Estate of Strohm, 241 So.2d 167 and Matter of Osborn, 8 Misc.2d at 866, 166 N.Y.S.2d 446. See 42 Am.Jur.2d, Inheritance, Etc., Taxes § 352 and Annot., 69 A.L.R.3d 122, 215.
In Matter of Osborn, 8 Misc.2d 859, 166 N.Y.S.2d 446, the New York court found that, when there is a conflict between a trust agreement and a will, the instrument later in time would control. In Osborn, the decedent had executed an inter vivos trust in 1935 and executed a will nineteen years later. The issue in Osborn was which instrument would control when the trust agreement was clear and unambiguous and expressed a valid method of apportionment of taxes but was in conflict with provisions of the decedent's later will. The court determined that the will  the later instrument  controlled.
In In re Estate of Strohm, 241 So.2d 167, the Florida court reviewed whether a will or an inter vivos trust provision controlled the payment of federal estate taxes. In Strohm, the court found that the will executed after the trust controlled and directed that the federal estate taxes be paid as authorized by the will.
The Pickrells claim since both Strohm and Osborn found the will controlled, therefore, the will is always to be the controlling document. The emphasis placed by the Pickrells is flawed. The rationale of Strohm and Osborn is that the tax clause of the last instrument executed controls regardless of whether the instrument is a trust or a will. Acceptance of the Pickrells' reasoning that only the will can direct payment of death taxes eliminates inter vivos trusts executed or amended subsequent to a will as part of estate planning.
An individual has the right to designate who or what portion of his or her estate is to bear the burden of the taxes and expenses of administration. An inter vivos trust, which is part of a coordinated estate plan, may include a provision instructing the trustee to pay the trust's ratable share of the death taxes and administration expenses. Under the facts of this case, where a conflict exists between an earlier executed will and later amended inter vivos trust as to how the death taxes and the administration expenses are to be paid, the last instrument in time controls.
The judgments of the district court and the Court of Appeals are affirmed.
ABBOTT, J., not participating.
HOLMES, C.J., and McFARLAND, J., concur in the result.