IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,999

SARAH E. THARRETT, as Successor Trustee of the
ROXINE POZNICH REVOCABLE TRUST,
*Appellee*,

v.

DAVID T. EVERETT,
*Appellant.*

SYLLABUS BY THE COURT

1.

Due process violations do not in and of themselves void a judgment. Due process violations that completely undermine personal jurisdiction may, however, void a judgment.

2.

When a trust beneficiary accepts the distribution awarded to him or her, he or she cannot then take an inconsistent position and challenge the amount distributed on appeal. The benefits received are not separable from any additional distributions to which the beneficiary believes he or she is entitled.

3.

A court has jurisdiction to award statutorily authorized attorney fees if there exists a case or controversy regarding those fees.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 3, 2024. Appeal from Bourbon District Court; ANDREA PURVIS, judge. Submitted without oral argument December 11, 2024. Opinion filed August 8, 2025. Judgment of the Court of Appeals dismissing the appeal is affirmed in part and reversed in part.

*David T. Everett*, appellant, was on the briefs pro se.

*Jacob T. Knight*, of Knight Law, LLC, of Iola, was on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: Roxine Poznich died testate in 2020 with a revocable living trust. The trust beneficiaries were her five children. The case before us centers on a bitter dispute between two of those children concerning the trust. Poznich's daughter, Sarah Tharrett, was named as the successor trustee. But Poznich's son, David Everett, sued in May 2021 to remove Sarah as trustee. David's lawsuit was dismissed.

In October 2021, Sarah sent a final trust report, including an accounting and a proposed distribution of remaining assets. Once again, David was dissatisfied. All beneficiaries except David executed releases acknowledging and approving the documents. David, proceeding pro se, raised several objections that prevented closing the trust.

Consequently, in June 2022, Sarah filed this declaratory action in her role as trustee under K.S.A. 60-1701 et seq. and K.S.A. 58a-201(c) seeking authorization to distribute the trust estate as provided in the trust report. Sarah also sought costs against David under K.S.A. 58a-1004 because his actions leading up to the declaratory suit prevented winding up the trust. David filed several pro se pleadings in response in which he accused Sarah of filing the action for an improper purpose due to his failure to execute the release. The parties engaged in extended motions practice. Ultimately, the district

2

court closed the trust and released Sarah from trustee duties. It further ordered Sarah's attorney to distribute the remaining funds from his trust account to the beneficiaries. Finally, the court awarded Sarah $4,000 in attorney fees from David's share of the trust distribution due to "extraordinary services in defense of the estate" by Sarah's attorney regarding David's motions.

David, again proceeding pro se, filed his notice of appeal, but he accepted his distribution check shortly thereafter. Sarah subsequently filed a notice of acquiescence with the district court and supplemented the record on appeal. The Court of Appeals then dismissed the appeal for lack of subject matter jurisdiction on acquiescence grounds. The Court of Appeals held that David had accepted the benefits of the district court judgment, and he was now barred from appealing the judgment. The Court of Appeals further found that the separability, coercion, and self-protection exceptions to acquiescence did not apply. Finally, the Court of Appeals denied Sarah's request for appellate costs and attorney fees based on its earlier finding that it had no subject matter jurisdiction to review the merits of the appeal, citing *Kaelter v. Sokol*, 301 Kan. 247, 250, 340 P.3d 1210 (2015). *Tharrett v. Everett*, No. 125,999, 2024 WL 1954298, at *4-6 (Kan. App. 2024) (unpublished opinion). Chief Judge Arnold-Burger concurred, agreeing with the panel that it had no jurisdiction to award costs or attorney fees. She questioned, however, the basis for such a rule. 2024 WL 1954298, at *6 (Kan. App. 2024) (unpublished opinion) (Arnold-Burger, C.J., concurring). David petitioned for review, and Sarah cross-petitioned solely on the attorney fees issue. We granted both petitions. Sarah has since moved for appellate attorney fees under Supreme Court Rule 7.07(c), or alternatively under Rule 7.07(b)(1) (2025 Kan. S. Ct. R. at 52).

ANALYSIS

The question at the heart of this appeal is whether David acquiesced to the district court's judgment when he accepted the trust distribution check. Acquiescence is a

3

question of law subject to unlimited review. It is a jurisdictional issue. Acquiescence occurs when a party voluntarily assumes the burdens or accepts the benefits of the judgment it contests on appeal. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006). "Subject to certain exceptions, as a general rule, a litigant who has accepted the benefits of the judgment of the trial court will be deemed to have acquiesced in such judgment and may not thereafter adopt an inconsistent position and appeal from such judgment." *Troyer v. Gilliland*, 247 Kan. 479, Syl., 799 P.2d 501 (1990).

But David argues that a party cannot acquiesce to a void judgment. And he argues that the panel never addressed this possibility. He asserts the district court's judgment was void because the district court denied him due process by entering final orders without affording him a meaningful opportunity to be heard and without a full copy of the trust instrument. It does appear the Court of Appeals failed to address David's claim in this respect, so we will address it now.

The Kansas Court of Appeals has regularly held that a party cannot acquiesce to a void judgment. See, e.g., *In re Henson*, 58 Kan. App. 2d 167, 174, 464 P.3d 963 (2020); *In re Marriage of Cline*, 17 Kan. App. 2d 230, 236, 840 P.2d 1198 (1992); *Sramek v. Sramek*, 17 Kan. App. 2d 573, 577, 840 P.2d 553 (1992). But we have never so held. We decline to authoritatively answer this question, though we caution that early caselaw from this court suggests this may not be an iron-clad rule. See *Ford v. Willits*, 237 Kan. 13, 16, 697 P.2d 834 (1985) ("Laches is an equitable doctrine. Though it should ordinarily not be a defense to a motion to open a judgment that is utterly void, there may be unusual circumstances . . . where it would be inequitable not to apply the doctrine."). Nonetheless, we will assume without deciding, for the purposes of this case, that the Court of Appeals is correct and that a party can never acquiesce to a void judgment.

Even assuming David's allegations about the final orders are true, due process violations do not in and of themselves void a judgment. To void a judgment, a due process violation must so completely extinguish a party's opportunity to be heard that it effectively eliminates a court's personal jurisdiction over the party. See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) (holding in the federal context that judgments are void only due to "a certain type of jurisdictional error or . . . a violation of due process that deprives a party of notice or the opportunity to be heard").

We have previously rejected arguments that the mere inability of a party to fully flesh out an argument is a due process violation that can void a judgment. *Colorado Interstate Gas Co. v. Beshears*, 271 Kan. 596, 611-12, 24 P.3d 113 (2001) (holding that the pipelines had the opportunity to make constitutional arguments and thus the judgment was not void). We acknowledge that certain imprecise language in our caselaw could suggest to the casual observer that any due process violation raises the specter of a void judgment. 271 Kan. at 611 ("A judgment entered in a manner inconsistent with due process is void."). See also *Davenport Pastures v. Board of Morris County Comm'rs*, 291 Kan. 132, Syl. ¶ 4, 238 P.3d 731 (2010) ("[T]he other party's rights to due process of law were violated and the Board's decision is void."). We take this opportunity to clarify that the subset of due process violations that may void a judgment are narrow—and are only present when a party is so excluded from consideration of the merits that the court effectively has no personal jurisdiction over that party. And that is demonstrably not the case here. David was personally served in June 2022. He proceeded to file an answer, a motion to dismiss, an amended motion to dismiss, an amended answer and counterclaim, a transcript request, a motion to disqualify opposing counsel, a reply brief to Sarah's consolidated response to his amended motion to dismiss and his counterclaim, a second amended motion to dismiss, and a memorandum in support of his motion to disqualify. He appeared in person at a status conference about two months after he was served.

Finally, he appeared in person again at the October 2022 hearing where the district court denied and dismissed all his motions and ordered the trust closed. We thus hold that his void judgment argument has no merit here.

David next argues that Sarah failed to preserve the issue of acquiescence at the district court, and that her filing a "Notice of Acquiescence" is not a valid procedural mechanism for raising the issue. The Court of Appeals, however, correctly ruled that acquiescence can be raised at any time, even sua sponte by an appellate court, because it implicates subject matter jurisdiction. See *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 494, 866 P.2d 1044 (1994) ("This court raised the issue of whether Gulf's partial payment of the judgment entered against it constitutes acquiescence."). Therefore, the Court of Appeals properly considered the issue.

Third, David argues that any acquiescence was an act of self-protection because Sarah's attorney had already "helped himself" to $2,262 worth of attorney fees without district court authorization. Sarah responds that David does not understand that the attorney for the trust was due attorney fees from all residuary beneficiaries in addition to what was awarded by the district court against David alone. Sarah is correct. The district court awarded $4,000 in fees exclusively from David's share, but that was not all the attorney fees to which the trust's counsel was entitled. "'The gift of a share of the residuary estate is, and is intended by the testator to be, indefinite in amount, and to be whatever is left after paying funeral expenses, attorneys' fees, executors' compensation, administrative expenses, debts of the decedent, and taxes.'" *In re Estate of Adair*, 237 Kan. 773, 778, 703 P.2d 793 (1985). Thus, the Court of Appeals was correct in holding that there is no basis in the record for David's self-protection argument.

Finally, David argues that the money he accepted is separable from his appeal. He insists that his right to additional money is based in the trust, not the district court judgment. He suggests that if he prevails on appeal, a redistribution of the trust would be

6

required regardless of whether he cashed the distribution check because he was seeking additional money. Sarah argues that the payment David accepted is clearly inseparable from his appeal because the appeal affects the amount David is entitled to receive, as well as the amounts the other beneficiaries are entitled to receive.

David's posture—that his right to more money is rooted in the *trust* and *not* in the district court *judgment*—is a creative but ultimately fruitless bit of rhetorical wordplay. Sarah initiated the declaratory judgment action to get a final district court ruling on what was owed to whom under the trust. And David accepted his distribution from the trust that occurred *because* of the district court's *judgment*.

We have long held that

"when a party to an appeal has paid any portion of a judgment rendered against such party, including the costs, such party will not be deemed to have acquiesced in the judgment so long as the issues on appeal cannot affect the payments made and the payment thereof is not involved in the issues on appeal. Likewise, any party to an appeal who accepts such payment shall not be deemed to have acquiesced in the judgment so long as the issues on appeal do not affect the obligation for the payment of or the right to receive such portion of the judgment." *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, 231, 597 P.2d 1080 (1979).

In situations where one party's "portion" directly impacts the portions awarded to other parties—that is, where a district court's final order apportions a fixed total "pot" among and between contending litigants—the judgments are inseparable. Acquiescing in the portion one has received necessarily implies acquiescing in the portions received by other parties. We made this clear in *Troyer*. The underlying facts in *Troyer* involved a plaintiff who had been a part of a joint farm venture that had gone sour. The district court awarded the plaintiff $12,125.40 and awarded the defendants the farming equipment. The plaintiff appealed, but while the appeal was pending, the plaintiff secured distribution of

7

the money deposited by the defendants with the district court. This court reasoned that, in effect, the plaintiff was challenging the division of the joint venture assets on appeal, and the money awarded to him at the district court as a part of that division was not separable from the assets awarded in the rest of the case. Thus, the plaintiff had acquiesced to the entire result and there was no jurisdiction. *Troyer*, 247 Kan. at 481-83.

The joint venture distribution situation in *Troyer* is like the trust distribution here. And under *Troyer*, seeking additional money is not separable from the distribution itself. When, as here, a trust beneficiary accepts the distribution awarded to him or her, he or she cannot then take an inconsistent position and challenge the amount distributed on appeal. The benefits received are not separable from any additional distributions to which the beneficiary believes he or she is entitled. David has thus acquiesced to the judgment, and his appeal is dismissed for lack of jurisdiction. 247 Kan. at 482-83.

There remains the issue of Sarah's claimed attorney fees. Sarah argues in her cross-petition for review that the Court of Appeals overextended *Kaelter* when it denied her request for appellate attorney fees. David argues *Kaelter* was correctly applied. In *Kaelter*, we held that the district court had not entered a final appealable order, and thus the Court of Appeals did not have jurisdiction to affirm the district court nor did it have jurisdiction to enter an attorney fee award. 301 Kan. at 247-48.

We agree with Sarah that *Kaelter* cannot be read to have established a blanket rule that a lack of jurisdiction over the merits of an appeal automatically means that a court has no jurisdiction to award attorney fees. The question of attorney fees is subject to its own jurisdictional inquiry. "Kansas courts have repeatedly recognized that the 'judicial power' is the 'power to hear, consider and determine controversies between rival litigants.'" *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 896, 179 P.3d 366 (2008). A true controversy contains "definite and concrete issues arising between parties with adverse legal interests that are immediate, real, and amenable to conclusive relief." 285

Kan. at 890-91. A dispute over legal fees—even when jurisdiction is lacking to consider the underlying merits of an appeal—can certainly be a live case or controversy. See *Roll v. Howard*, 316 Kan. 278, 288, 514 P.3d 1030 (2022) (dismissing appeal as moot but concluding that petitioner was not entitled to attorney fees as a prevailing party). The Court of Appeals should have considered Sarah's request.

We can move past that error in this case, as Sarah's motion for appellate attorney fees under Rule 7.07(c), and alternatively under Rule 7.07(b), puts the issue squarely in front of us. Rule 7.07(c) permits a court to award attorney fees to a party forced to defend a frivolous appeal. A frivolous appeal presents no justifiable question and is easily recognized as having little chance of success. *Peoples Nat'l Bank of Liberal v. Molz*, 239 Kan. 255, 257, 718 P.2d 306 (1986). Sarah's motion correctly notes that David's supplemental brief argues a litany of meritless and irrelevant points. But David did present colorable arguments regarding void judgments (which were not addressed below) and the separability of his acceptance of his distribution money from his appeal, as illustrated above. Thus, even though David has not prevailed, we cannot conclude his appeal was frivolous.

Alternatively, Sarah points out that she could receive an attorney fee award under Rule 7.07(b)(1). She argues that it would be inequitable for her to personally bear the cost of defending the trust and herself as trustee under the circumstances of David's repeated meritless attempts to get more money. We may award such equitable attorney fees when the district court had authority to award them. Rule 7.07(b)(1). "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." K.S.A. 58a-1004. In compliance with Rule 7.07(b)(2), Sarah has provided an affidavit attached to her motion

explaining the nature of counsel's services, listing the number of hours expended on appeal, and applying the reasonableness factors. Sarah has also provided an itemized statement of the attorney services provided to the trust on appeal.

Under the Kansas Rules of Professional Conduct (KRPC) 1.5, the following factors are considered in determining the reasonableness of a fee:

> "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent." KRPC 1.5(a) (2025 Kan. S. Ct. R. at 326).

Here, Sarah's counsel is a solo practitioner who spent 47.85 hours on this appeal. (This does not include the hours for which counsel requested compensation at the Court of Appeals.) Counsel's time records are littered with the time spent reviewing and responding to David's numerous and lengthy pro se filings on appeal. Counsel charges $200 an hour and achieved a successful result at the Court of Appeals. The issues raised in the case are also somewhat novel. Sarah requests $9,570 in attorney fees plus the $1,750 in attorney fees incurred at the Court of Appeals.

David argues against the merits of Sarah's request by asserting that (1) the court cannot determine whether the attorney services benefitted the trust because the trust instrument is not in the record, (2) the appeal was not frivolous, (3) counsel's affidavit is

10

insufficient to show reasonableness under the KRPC and indicates anticipated time that never materialized, and (4) the requested fees are disproportionate to the value of the trust and shock the conscience.

David's first and fourth arguments are immediately not meritorious—the attorney has defended the trust against appellant's repeated attacks on the process and thus been of tremendous benefit to it, and the reason the attorney fees are relatively high is due to appellant's actions. We have agreed, however, with David's second argument—the appeal was not frivolous. David admits that the anticipated additional 2.5 hours that never materialized were not included in the total amount of fees requested. Furthermore, David's attack on the reasonableness factors articulated by counsel is largely stylistic. For instance, David faults counsel for not addressing factor eight, which asks the court to consider whether a fee is fixed or contingent—irrelevant in this instance. We conclude there is sufficient evidence in the record to establish an equitable award to Sarah of her attorney fees for counsel's efforts in representing the trust under Rule 7.07(b)(1) and K.S.A. 58a-1004.

Judgment of the Court of Appeals dismissing the appeal is affirmed in part and reversed in part. Sarah is awarded appellate attorney fees in the amount of $11,320.

WILSON, J., not participating.