No. 68,945

SHEILA A. and THOMAS A., by their next friend, by DR. KARL MENNINGER; BROOKS B. and DARRELL B., by their next friends, J. EUGENE BALLOUN and SHEILA WOMBLES; KAREN C., by her next friend, THE REVEREND C.L. BACHUS; DAVID D., by his next friend, BISHOP KENNETH W. HICKS; JASON E., by his next friends, PAUL DAVID WALKER and BARBARA WALKER; BONNIE F., by her next friend, KRISTY L. SIMPSON; and ARTHUR G., by his next friend, JUDY FRICK, *Appellants*, v. JOAN FINNEY, Governor, DONNA WHITEMAN, Secretary of the Kansas Department of Social and Rehabilitation Services; CAROLYN HILL, Commissioner of Youth Services; JAN WAIDE, Director, Kansas Children in Need of Care Program; and THE STATE OF KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellees*.

(861 P.2d 120)

Opinion filed October 29, 1993.

*Christopher Hansen*, of the American Civil Liberties Union, of New York, New York, argued the cause, and *Christopher Dunn*, of New York, New York, and *Rene Netherton*, of Topeka, were with him on the brief for appellants.

*Deanne Watts Hay*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: Plaintiffs' action challenges the adequacy of the State's Child in Need of Care program. The Governor of the State of Kansas is one of several named defendants. The trial court dismissed the Governor as a defendant because it believed it could not grant the relief sought by plaintiffs against the Governor. Plaintiffs appeal from the order dismissing the Governor.

After the appeal was docketed, plaintiffs entered into a settlement agreement with the remaining defendant. Thus, we are first faced with the issue of whether this appeal is now moot in that plaintiffs are requesting an advisory opinion and no real controversy exists at this time.

Some background is necessary in order to understand the dispositive issues.

Plaintiffs brought a civil rights action on behalf of a class of children who have been placed in the Child in Need of Care (CINC) program of the Kansas Department of Social and Rehabilitation Services (SRS) or who are at risk of such placement. The trial court certified the class as children who are in the legal and/or physical custody of the Kansas Department of Social and Rehabilitation Services as well as children who the department knows or should know are at risk of coming into the department's CINC program. Plaintiffs describe numerous instances where they contend the CINC program failed to provide adequate care for the named plaintiffs. Plaintiffs assert claims under federal statutes, the federal Constitution, state law, and the state constitution.

The case originally named Governor Hayden as a defendant. When Governor Finney took office, she was substituted for Governor Hayden pursuant to K.S.A. 60-225(d). Also named as defendants were the Secretary of the Kansas Department of Social and Rehabilitation Services, the Commissioner of Youth Services, the Director of the Kansas Children in Need of Care Program, and the Kansas Department of Social and Rehabilitation Services (SRS).

SRS has overall responsibility for social services programs in the state of Kansas. Youth Services is one of seven departments under SRS. Within the Department of Youth Services is the Children in Need of Care Program.

The district court judge attempted several times to glean from plaintiffs exactly what relief they sought against each named defendant. At a hearing on April 27, 1992, plaintiffs' counsel indicated that they were not seeking personal damages against any defendant, but rather were seeking relief against the defendants in their official capacity. Plaintiffs' counsel also stated:

"The reason that the Governor is needed [as a party] is the Governor has the authority to appoint the Secretary and to make the Secretary comply with laws under penalty of removal. All right. The second authority that the Governor has is the Governor deals with the legislature. The Governor would have the opportunity to ask the legislature for additional funding that might be needed should plaintiffs succeed on their claims and, second, has the authority, then, to also ask the legislature for legislative changes that might be needed to bring the State into compliance if the plaintiffs succeed on their claims. . . .

"I can be quite honest that at a minimum we—plaintiffs need, for injunctive relief and for purposes of your orders, the Governor and the Secretary [of SRS] because . . . the ACLU has had experience where, one, it has just been the Secretary, and after trial, or after a Consent Decree was issued, a judge attempted to force the Secretary to do certain things to be in compliance with the Court's Orders. The Governor would simply veto the order or strike it because the Governor wasn't under the authority of the Court."

At a May 4, 1992, hearing, plaintiffs' counsel stated: "I want to make it clear that the plaintiffs are not seeking—we said this before—we are not seeking different relief against different defendants. . . . [W]e are seeking a single form of relief that would run against all three defendants." At a July 29, 1992, hearing, plaintiffs' counsel stated:

"Much of the confusion in this motion is caused by the Governor's persistently characterizing our claims in what I think is an incorrect way. We do not claim a right to have the Governor submit a particular budget. We do not claim a right to have the Governor pass financial legislation. We do not claim a right to have the Governor fire the Secretary. We do claim a right to have the State of Kansas comply with clearly established Federal constitutional and statutory law and state statutory law and State Constitution. And we claim through the personal involvement of the Governor and through her supervisory involvement, that the Governor has the authority and the responsibility to ensure that that law is complied with.

"And it would be perfectly ordinary for this Court to order the government take all steps necessary to comply with what are clear legal mandates. How the Governor complies is her business. Whether she complies by ordering the Secretary to do something, or by firing the Secretary, or by some other

method, that's up to her. That's entirely up to her. The question is whether she has to comply with the requirements of law, whether she has to comply with the promise she made when she signed her name to these documents [copies of the state Federal IV-B plan for child welfare], whether she has to comply with clear legal mandates. So our claim is not, as they repeatedly characterize it, the claim is to fire the Secretary or whatever, the claim is, the Governor has to be held responsible for the violations of law that occurred in the state."

The district court granted the Governor's motion to dismiss on August 20, 1992, stating:

"The plaintiffs state that they do not seek an order from this Court requiring the Governor to veto specific legislation, budgetary or otherwise, or hire or fire the Secretary of SRS. It is a given that the Governor singularly cannot appropriate money or even create new positions. Plaintiffs argue the Governor should remain a party in case some relief is sought which cannot be afforded, if the Governor is not a party.

"The only relief sought by plaintiffs is to compel SRS compliance with the law. Any order that can be issued to the Governor in regard to plaintiffs' claims can also be made directly to the Secretary of SRS who is statutorily responsible for administration of the programs that plaintiffs allege are deficient. Any unlawful activities of SRS can be enjoined by the Court.

"The only possible relief obtainable as to the Governor would be an order directing her to have the Secretary of SRS perform some act under penalty of dismissal. This intermediate step in fashioning a remedy is unnecessary. The Court concludes as a matter of law that the Court cannot grant the relief sought by the plaintiffs against Governor Joan Finney and for this reason the Motion to Dismiss should be and is hereby sustained."

This order was made a final judgment on October 23, 1992. It is from this order that plaintiffs appeal.

At various stages of the proceedings of this case, all defendants except SRS were dismissed.

During the pendency of this appeal, the plaintiffs entered into a settlement agreement with the remaining defendant that disposed of all matters in controversy. On June 18, 1993, the trial court held a public hearing and held the agreement to be a "fair and equitable settlement of this case" and approved the agreement and dismissed the case.

Kansas appellate courts are constitutionally without authority to render advisory opinions and appellate review is dependent upon the existence of an actual case or controversy. *NEA-Topeka, Inc. v. U.S.D. No. 501,* 227 Kan. 529, 531, 608 P.2d 920 (1980). In *U.S.D. No. 503 v. McKinney,* 236 Kan. 224, 229, 689 P.2d

860 (1984), we said that an appellate court will not decide moot issues where it cannot make its judgment effective and that this rule applies to both private and public controversies and to law or fact issues. We also stated that for an injunction to issue, there must be some indication that there is a threatened injury. 236 Kan. at 236.

Plaintiffs' principal argument is that the settlement could be frustrated if we do not make the Governor a party and the State fails to make a good faith effort to carry out the terms of the agreement.

The plaintiffs have settled all existing controversies in this case with an agency of the State of Kansas. No specific relief could be obtained from the Governor at this time. Plaintiffs make no allegation of wrongdoing against the Governor at this time and no allegation of a breach of the agreement. We could enter no meaningful order. As we view it, we would be ordering the Governor to obey the law and carry out her duties as Governor of the State of Kansas without a finding of a wrongful act and without specific directions concerning specific action to be taken. This we cannot do. An issue becomes moot when a judgment of the appellate court would be of no consequence. *Six Cities v. State Corporation Commission*, 213 Kan. 413, Syl. ¶ 1, 516 P.2d 596 (1973). The issues originally raised by plaintiffs against the Governor, if valid, are now moot by virtue of the agreement plaintiffs entered into and which was approved by the trial court.

Appeal dismissed as moot.