(983 P.2d 274)
No. 80,513

Ola L. Drake, *Appellant,* v. Benedek Broadcasting Corporation, *Appellee,* v. Lionel Q. Drake, *Appellant.*

Opinion filed July 16, 1999.

*John M. Simpson,* of John M. Simpson, P.C., of Kansas City, Missouri, for appellants.

*Michael W. Merriam,* of Gehrt & Roberts, Chartered, of Topeka, for appellee.

Before Green, P.J., Pierron, J., and David Prager, Chief Justice Retired, assigned.

Prager: C.J.: Ola L. Drake and her husband, Lionel Q. Drake, appeal from a judgment of the trial court granting Benedek Broadcasting Corporation (Benedek) a permanent injunction preventing the Drakes from picketing or threatening to picket advertisers on Benedek's television station, WIBW-TV. On appeal, the Drakes claim that by restricting their picketing and faxing activities, the injunction violates their First Amendment rights. In addition, the Drakes maintain that the injunction is an unconstitutional prior restraint on speech. Finally, the Drakes question whether the injunction is an appropriate remedy.

Ola sued her former employer, Benedek, for violating the terms of her employment contract. After filing the suite, Ola and her hus-

band, Lionel, sent faxes, picketed, and threatened to picket several of Benedek's advertisers.

The faxes stated the following:

"This serves as notice [Name of Businesses] is scheduled to be picketed.

"The reason your business is being targeted is because of your support of WIBW-TV. You will see first hand, how the people of this community have sympathized with those holding the eight foot signs appearing at 21st and Wannamaker [*sic*], saying 'WIBW-TV EXPLOITS WOMEN' and 'WIBW-TV BREAKS CONTRACTS.'

"You can avoid being picketed by canceling your advertising on WIBW-TV. If you continue to support WIBW-TV, we will add the sign '[Name of business] SUPPORTS WIBW-TV.' "

Lionel also sent two-page faxes to several businesses. The first page stated:

"This serves as a courtesy notice that the attached flyer will be published to raise public and consumer awareness that [Name of Business] HELPS SUP-PRESS FREE SPEECH.

"Every time you use the consumer's hard earned money to buy advertising on CBS WIBW-TV, you aid and abet WIBW-TV's war against free speech. You also help WIBW-TV pay huge law firms to uphold the theft of television programming, the exploitation of women, and the breach of contract.

"Right now as you read this courtesy notice, an all out war is being waged by WIBW-TV to suppress free speech and peaceful picketing. The ACLU is vigorously defending all Americans against the media giant's tyranny. Once freedom and liberty prevails against the media tyrants at WIBW-TV, [Name of Business] will also be picketed if you continue to support WIBW-TV."

The second page stated: "[NAME OF BUSINESS] HELPS SUP-PRESS FREE SPEECH."

The Drakes picketed several businesses that advertised on WIBW-TV. They picketed Laird Noller and Carpet One twice. They picketed A-1 Appliance one or two times. When picketing, the Drakes carried two of the following signs: "WIBW breaks contracts," "WIBW exploits women," "Laird Noller Ford supports WIBW-TV," "Carpet One supports WIBW-TV," "A-1 Appliance supports WIBW-TV," and/or "WIBW-TV steals programming." They also picketed WIBW-TV about 12 times.

Benedek moved for a permanent injunction seeking to enjoin the Drakes from picketing, sending faxes, and calling its advertis-

ers. Benedek alleged that the Drakes were tortiously interfering with its business relationships with its advertisers and were causing monetary losses to Benedek.

Although the evidence failed to show that any business canceled advertising due to the picketing, two of Benedek's advertisers testified that if they had been picketed, they would either stop or not resume advertising on WIBW-TV until the picketing issue had been resolved.

Ola testified that the purpose of the picketing was to raise public and consumer awareness about the exploitation of women at WIBW-TV and about WIBW-TV breaking contracts. Lionel testified that they were picketing to raise public and consumer awareness of the breach of contract and events that occurred between Ola and WIBW-TV.

The trial court granted a temporary restraining order restricting the picketing to only the parties involved in the dispute. The Drakes were limited to picketing WIBW-TV at its place of business or in any public area.

The Drakes discontinued all activities. Approximately 6 months after the temporary restraining order was issued, Lionel sent faxes to several of WIBW-TV's advertisers.

After a hearing, the trial court granted a permanent injunction, finding that the purpose of the letters threatening to picket and the picketing was to encourage and intimidate the businesses not to advertise on WIBW-TV due to the dispute over Ola's employment. The trial court also found that Benedek did not sustain any financial losses as a result of the activities by the Drakes. The trial court found, however, that WIBW-TV was under direct threat of losing advertising revenues due to the picketing.

In its memorandum decision, the trial court noted that the First Amendment does not protect a secondary boycott motivated by economic concerns. The trial court then found that the picketing constituted a secondary boycott motivated by economic concerns. The trial court did not limit a direct boycott or picketing of WIBW-TV. Finally, the trial court found that an injunction was the only available remedy to protect innocent third parties from the private economic dispute with WIBW-TV.

*Standard of Review*

The issues presented on appeal require this court to determine if the trial court's conclusions of law concerning the scope of the protection afforded by the First Amendment are correct and whether the facts support the trial court's findings. Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *State v. Haskins*, 262 Kan. 728, 731, 942 P.2d 16 (1997); *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993). Determinations of fact which are not appealed from are final and conclusive. *Justice v. Board of Wyandotte County Comm'rs*, 17 Kan. App. 2d 102, 109, 835 P.2d 692, *rev. denied* 251 Kan. 938 (1992). An appellate court's review of conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

*Freedom of Speech*

First, the Drakes argue that the permanent injunction restricting their picketing and faxing activities against WIBW-TV's advertisers violates their right to freedom of speech under the First Amendment to the United States Constitution.

In support of their position, the Drakes rely primarily on the decision of the Supreme Court in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 73 L. Ed. 2d 1215, 102 S. Ct. 3409, *reh. denied* 459 U.S. 898 (1982). In *Claiborne*, the Court held that a secondary boycott motivated by *political issues* was protected by the First Amendment, regardless of a state's broad power to regulate and protect economic activity. See also *Environmental Planning & Information Council v. Superior Court*, 36 Cal. 3d 188, 195-96, 203 Cal. Rptr. 127, 680 P.2d 1086 (1984) (a secondary boycott moti-

vated by political concerns is protected by the First Amendment). In this case, the trial court distinguished the Drakes' situation from *Claiborne* by noting that the Drakes' activities involved only economic concerns and not political concerns.

"Secondary picketing" is defined as picketing which is calculated to involve neutral employers and employees in a labor dispute with the primary employer. *Hawaii Elec. Light Co. v. IBEW, Local 1186*, 844 F. Supp. 1381, 1387 (D. Hawaii 1993). "Primary picketing" is designed to exert pressure on the employer, while "secondary picketing" is designed to bring pressure on one other than the employer. *Papermakers Union v. Old Dominion*, 210 Va. 132, 135, 169 S.E. 2d 445 (1969). In *Labor Board v. Fruit Packers*, 377 U.S. 58, 63, 12 L. Ed. 2d 129, 84 S. Ct. 1063 (1964), the Supreme Court recognized that Congress may prohibit secondary picketing calculated "to persuade the customers of the secondary employer to cease trading with him in order to force him to cease dealing with, or to put pressure upon, the primary employer." Such picketing spreads labor discord by coercing a neutral party to join the fray. In *Electrical Workers v. Labor Board*, 341 U.S. 694, 705, 95 L. Ed. 2d 1299, 71 S. Ct. 954 (1951), the Court expressly held that a prohibition on "picketing in furtherance of [such] unlawful objectives" did not offend the First Amendment.

The Drakes do not dispute the trial court's classification of their activity as a secondary boycott resulting from a labor dispute or that the Supreme Court has held this activity is often unprotected by the First Amendment.

Federal law prohibits a labor union from engaging in a secondary boycott, including picketing. 29 U.S.C. § 158(b)(4)(ii)(B) (1994). Judicial action regulating activities such as these pursuant to the National Labor Relations Act have repeatedly been held not to violate the First Amendment. See for example *NLRB v. Retail Store Employees*, 447 U.S. 607, 616, 65 L. Ed. 2d 377, 100 S. Ct. 2372 (1980). These cases emphasize that Congress has recognized the need to protect neutral employers from the labor disputes of others.

Kansas also statutorily prohibits activities similar to those engaged in by the Drakes. In Kansas, a person is prohibited from

picketing beyond the area of the industry within which a labor dispute arises. K.S.A. 44-809(13). This law is similar to the federal law prohibiting secondary picketing, except the federal law only applies to labor unions.

The Drakes incorrectly assert that the trial court relied on K.S.A. 44-809(13) as a basis for its decision. The trial court correctly recognized the inapplicability of the state and federal legislation to this case. It merely referred to this legislation to support its holding that this type of activity is not necessarily protected by the First Amendment.

Here, the Drakes take issue with the trial court's finding that the picketing was motivated by a labor dispute rather than political concerns over treatment of women in the workplace and unfair business practices. However, the trial court's finding that the Drakes picketed to interfere with WIBW-TV's advertisers because of a labor dispute between Ola and WIBW-TV is supported by substantial competent evidence.

Substantial competent evidence supports the finding that the picketing was related to a labor dispute and for the purpose of interfering in WIBW-TV's relationship with its advertisers. Despite statements at the hearing that the protests were about the general mistreatment of women at WIBW-TV, the signs used while picketing indicated the protest was about Ola's contractual labor dispute with WIBW-TV. Lionel testified that the protest was about the mistreatment Ola received as an employee of WIBW-TV. The most compelling evidence that these protests to advertisers were conducted to interfere in WIBW-TV's business relationships was the content of the faxes sent to each business prior to picketing. These faxes showed the Drakes' intention was to force these businesses to terminate their relationships with WIBW-TV. The trial court also noted that the Drakes' failure to continue picketing WIBW-TV after the temporary restraining order was in place was evidence that the Drakes' main objective was to discourage business relationships between the advertisers and WIBW-TV rather than for political purposes.

### Unconstitutional Prior Restraint on Speech

The Drakes next complain that the injunction constitutes an unconstitutional prior restraint on speech. In this case, it is important to note that the speech itself is not restricted but rather the injunction limits the place and manner of expression. Reasonable time, place, and manner restrictions on speech are recognized exceptions to the general prohibition against prior restraints. The Drakes are still able to continue picketing WIBW-TV. The trial court did not enjoin the Drakes from continuing to express their message concerning WIBW-TV but merely limited where such activity could take place and who it could target. It did so to protect the third-party businesses not involved in the labor dispute from being adversely affected by the activity. In this case, the government interest that the injunction serves to address is the protection of neutral parties from threats related to a private labor dispute. This interest has been recognized as a sufficient interest to warrant abridgement of First Amendment rights. In light of the fact that secondary boycotting is generally not protected when motivated by economic concerns and the restrictions here were content neutral, the injunction is not an unconstitutional prior restraint on the Drakes' freedom of speech.

### Appropriate Remedy

The Drakes' final point is that a permanent injunction is not an appropriate remedy when there has been no judicial determination that the Drakes violated the law or committed an illegal act. We find this point to be without merit. Historically, the Supreme Court has stated that injunctions are remedies imposed for violations or *threatened violations of a legislative or judicial decree and can be utilized without a showing of past wrongs.* See *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 764-65, 129 L. Ed. 2d 593, 114 S. Ct. 2516 (1994).

Kansas has not limited this remedy to an activity that was found to have violated a law or was illegal. In *Sheila A. v. Finney*, 253 Kan. 793, 797, 861 P.2d 120 (1993), the court stated that "for an injunction to issue, there must be some indication that there is a threatened injury."

In the present case, the trial court is providing relief from a threatened tortious interference with a contract. The trial court heard testimony regarding the effect the picketing was having on both the third-party advertisers and WIBW-TV and considered the Drakes' intent behind their activity. Benedek has filed a counterclaim against the Drakes for damages resulting from the picketing. The trial court was provided sufficient information to determine that the injunction was being sought for protection against a threatened injury.

The judgment of the trial court granting a permanent injunction is affirmed.